**Janet C. MANGINI, a California Corporation, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO., et al., Defendants.**

No. C–92–0258.

United States District Court, N.D. California.

March 12, 1992.

William S. Lerach, Milberg, Weiss Bershad, Specthrie & Lerach, San Diego, Cal., Alan M. Caplan, Bushnell, Caplan & Fielding, San Francisco, Cal., for plaintiff.

Martin R. Glick, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendants.

## ORDER RE REMAND

CONTI, District Judge.

### I. Introduction

Plaintiff, Janet C. Mangini ("Mangini"), brought this suit in California court against defendant, R.J. Reynolds Tobacco Co. ("Reynolds"), among others, alleging violations of the Federal Cigarette Labeling and Advertising Act ("Labeling Act"), 15 U.S.C. § 1333(a)(2), and California Business and Professions Code §§ 17200 *et seq.* Mangini alleges that various aspects of the "Joe Camel" advertising campaign for Camel brand cigarettes, ranging from T–Shirts to matchbooks, advertise cigarettes but do not include warnings about the detrimental health effects of smoking as required by the Labeling Act.

Plaintiff, pursuant to the private attorney general provision of the California code, § 17204, sues on behalf of the California public, seeking injunctive relief in the form of remedial advertising, and a constructive trust comprised of the profits which defendants allegedly unjustly earned as the result of the allegedly illegal advertising.[1]

---

1. Cal.Bus. and Prof.Code § 17204 provides:
   Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,0000, and, with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor, or with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association *or by any person acting for the interests of itself, its members or the general public* (emphasis supplied).

Defendants removed the case to federal court, claiming federal jurisdiction exists on both diversity and federal question grounds. Presently before the court is Mangini's motion to remand on the grounds that diversity and federal question jurisdiction are lacking, and for lack of standing.

## II. Discussion

The jurisdiction of federal courts is defined and limited by Article III of the Constitution. *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947, 959 (1968). The defendant bears the burden of establishing federal jurisdiction, and must overcome a strict construction of the removal statute against removal. *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1393 (9th Cir.1988). Federal courts must "scrupulously confine" the exercise of jurisdiction to those cases which fall within the purview of the removal statute. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Any doubts as to removability are resolved in favor of remanding the case to state court. *Kaneshiro v. North American Co. for Life and Health,* 496 F.Supp. 452, 461 (D.Haw.1980).

### A. Federal Question Jurisdiction

■ Defendant contends that Mangini's claim "arises under" federal law because the vindication of her right under state law "necessarily turns on some construction of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420, 430 (1983). Defendant claims that whether it violated the Labeling Act is not merely an element of the underlying state action, it is the only element. The

court finds these arguments unpersuasive in light of the clear wording of Mangini's complaint and relevant case law.

It is first important to note that the Labeling Act does not explicitly provide for any private right of action.[2] Moreover, even if the court were to apply the accepted test for determining whether or not Congress intended the statute to include a private right of action, this statute would fail that test.[3] There is no indication of any kind that Congress intended to provide a private right of action pursuant to the Labeling Act. It would therefore "flout congressional intent to provide a private federal remedy for the violation of the federal statute." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 812, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650, 661 (1986).

As in *Merrell Dow,* this case involves a complaint alleging a violation of a federal statute as an element of a state cause of action. *Id.* at 817, 106 S.Ct. at 3237, 92 L.Ed.2d at 664. In that case, and where Congress has determined that there should be no private, federal cause of action for the violation, the complaint does not state a claim which "arises under" federal law and does not, therefore, confer federal question jurisdiction on this court. Interpreting *Merrell Dow* in a way diametrically opposed to defendants' contentions in this case, the Ninth Circuit has held that "if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial' federal question." *Utley v. Varian Associates, Inc.,* 811 F.2d 1279, 1283 (9th Cir.1987).

[2] Defendants' argument that Mangini's complaint is based entirely on federal

---

**2.** 15 U.S.C. § 1339 of the Federal Cigarette Labeling Advertising Act governs injunction proceedings, and provides:

The several district courts of the United States are invested with jurisdiction, for cause shown, to prevent and restrain violations of this chapter upon the application of the Attorney General of the United States acting through the several United States attorneys in their several districts.

**3.** The four pronged test, set forth in *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775,

1779, 68 L.Ed.2d 101, 107 (1981), requires: (1) the plaintiff be one of the class for whose especial benefit the statute was enacted, (2) there be an indicia of legislative intent, explicit or implicit, to create a private remedy or deny one, (3) the implication of a private remedy must further the underlying legislative scheme, and (4) the cause of action be one traditionally relegated to state law. *citing Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

law is further belied by the wording of the complaint itself, which alleges in the First Cause of Action that defendant's advertisements:

> violate the Federal Cigarette Labeling and Advertising Act (15 U.S.C. § 1333(a)(2)) which prohibits advertising cigarettes without a health warning, *and* constitute an unlawful and unfair business practice under California Business and Professions Code §§ 17200 *et seq.* (emphasis supplied).

It is possible, in other words, that defendants have violated the California statute even without proving Labeling Act violations. When read in this manner, Mangini's complaint does not rest entirely on an interpretation of federal law at all. The court finds that defendant's removal on federal question grounds was improvident.

### B. Diversity Jurisdiction

■ Neither party contests the existence of complete diversity between the parties. Mangini, by way of analogy to a class action, argues that this court does not have diversity jurisdiction because each member of the "class", that is, each member of the California public, must independently satisfy the jurisdictional amount of fifty thousand dollars. However, this case is not a class action, nor does it possess many of the defining characteristics of a class action. Mangini has cited no authority which indicates that the court should treat a private attorney general action as a class action for the purposes of determining whether the jurisdictional amount has been satisfied, and the court declines to do so. As a result, Mangini's proposition that the jurisdictional amount may not be defined by the detrimental value of the suit to defendant fall by the wayside.

■ Rather, in non-class action cases, the amount in controversy may be measured either by the value of the relief sought by the plaintiff or the cost to the defendant if the relief is granted. Schwarzer, Federal Civil Procedure Before Trial, 2:486 at 2C–46 (1991); *See Ridder Bros. v. Blethen,* 142 F.2d 395 (9th Cir.1944). Mangini's claims that *Ridder Bros.* has been "effectively overruled" are without merit.

Defendant has demonstrated to the court's satisfaction that it would suffer damage far in excess of fifty thousand dollars if Mangini were to prevail on her claims. Accordingly, the court finds that the amount-in-controversy requirement of diversity jurisdiction is satisfied. Jurisdiction is proper in this court on diversity grounds if plaintiff has standing.

### C. Standing

■ Standing is a threshold question in every federal case. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction (citations omitted)." *Id.* The plaintiff must have suffered "some threatened or actual injury resulting from the putatively illegal action." *Id.*

■ The standing inquiry involves both constitutional and prudential limitations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.1983). The "three separate but interrelated components" of Art. III standing limitations are: (1) there must be a distinct and palpable injury to the plaintiff, (2) there must be a fairly traceable causal connection between that injury and the challenged conduct of the defendant, and (3) there must be a substantial likelihood that the relief requested will redress or prevent the injury (citations omitted). *Id.* at 1270. The three prudential limitations are (1) the plaintiff must assert his own rights and not rest his claim to relief on the legal rights or interests of third parties, (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the plaintiff's injury must not be "shared in equal measure by all or a large class of citizens"—if so it represents a generalized grievance not normally appropriate for a judicial resolution, and (3) the plaintiff's interest must arguably be within the zone

of interests intended to be protected or regulated by the statute or constitutional guarantee in question (citations omitted). *Id.*

■ There are two alternative, but related, ways Mangini could be found to have standing in this court. First, as defendant argues, the very existence of a state created statutory right may confer "injury" on Mangini sufficient to meet federal standing requirements. As the *Warth* court held:

> Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing' (citations omitted).

*Warth,* 422 U.S. at 500, 95 S.Ct. at 2206, 45 L.Ed.2d at 355. Defendant contends that the mere violation of the state statute, which confers on plaintiff standing in state court, rises to the level of Art. III injury. Defendant fails to realize, however, that the "statutes" to which the *Warth* court refers, and those to which the cases cited in *Warth* refer, are *all federal statutes.* That such acts of Congress may confer standing where none would otherwise exist illustrates the relationship between the Constitutional and prudential limitations on standing in federal court:

> Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered "a distinct and palpable injury to himself," that is likely to be

redressed if the requested relief is granted.

*Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

Defendants have cited no authority, however, and this court can find none, which suggests that *state legislatures* may expand the standing in federal courts, even in a diversity case. It is one thing when Congress enacts a statute, the violation of which constitutes "injury" in the Art. III sense. Congress has, in that case, overridden the prudential limitations and provided an injury which confers standing. It is quite another thing to suggest that the states have the same power to waive by statute the prudential, or more problematically, the constitutional limitations on standing in federal court and, by way of a state created right, confer injury in the Art. III sense where none would otherwise exist.[4]

■ Second, since this court is sitting as a diversity court it could simply look to the state standing rule to determine plaintiff's standing. Mangini has standing in California court. *See Hernandez v. Atlantic Finance Co.,* 105 Cal.App.3d 65, 72–73, 164 Cal.Rptr. 279 (1980). However, and as the above discussion suggests, state standing rules need not be honored by the federal courts if Art. III requirements are not met. 13A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, 2d § 3531.13 at 91. *See People v. Beltz Travel Service, Inc.,* 379 F.Supp. 948 (N.D.Cal. 1974) (plaintiff lacked standing on removal in federal court where suit was brought pursuant to predecessor statute to § 17204).

■ If Art. III limitations are met, but the state standing rule conflicts with federal prudential limitation, at least one commentator has suggested that "the federal

---

4. In *Fiedler v. Clark,* 714 F.2d 77, 79–80 (9th Cir.1983), for example, a plaintiff lacked standing where he sued as a private attorney general under a Hawaii state statute which conferred standing to enforce federal statutes which themselves did not provide a private right of action.

The present case, for all relevant purposes, is identical. Standing is a jurisdictional inquiry and states "have no power directly to enlarge or contract federal jurisdiction". *Id.* at 80, *quoting Duchek v. Jacobi,* 646 F.2d 415, 419 (9th Cir. 1981).

court would have to choose between the general obligation to exercise diversity jurisdiction and its doubts as to the wisdom of enforcing this state claim of this particular plaintiff." *Id.* Since federal courts should avoid the constitutional issue as long as other grounds for decision exist[5], the court should first look to the prudential considerations to see if they conflict with the state standing rule, and only if they do should the court then proceed to consider whether the state rule would expand standing in federal court beyond the limitations of Art. III.

■■■ This court's decision is made easier by the procedural posture of this case. Where sufficient doubt or ambiguity exists concerning the court's jurisdiction, all such doubts should be resolved in favor of remanding to the state court. In this case, there is considerable doubt whether Mangini can satisfy either the prudential or constitutional limitations on standing in the federal court. Therefore, without reaching a conclusion on whether or not Mangini could meet the Art. III standing requirements, the court finds that this case should be REMANDED to California state court.

III. Conclusion

In accordance with the above reasoning, the court hereby GRANTS plaintiff's motion to remand, and orders this case REMANDED to California state court.

IT IS SO ORDERED.

---

**5.** *McMichael,* 709 F.2d at 1271.