TOXIC INJURIES CORPORATION, a California public benefit corporation acting as a private attorney general on behalf of the general public, Plaintiff,

v.

SAFETY–KLEEN CORPORATION, a Wisconsin corporation, Laidlaw Environmental Services, Inc., a Delaware corporation, and Does 1 through 100, inclusive, Defendants.

No. CV 99–4930 DT (RZX).

United States District Court,
C.D. California.

June 28, 1999.

Raphael Metzger, James William Parker, Raphael Metzger Law Offices, Long Beach, CA, for Plaintiff.

Robert L. Dickson, Christina O. Nyhan, Mark Emmanuel Gustafson, Frederick J. Ufkes, Arter & Hadden, Los Angeles, CA, for Defendants.

ORDER **GRANTING** PLAINTIFF'S MOTION TO REMAND ACTION TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES AND **REMANDING** ACTION TO THE SUPERIOR COURT; **DENYING** PLAINTIFF'S MOTION FOR AN AWARD OF JUST COSTS AND EXPENSES, INCLUDING ATTORNEY'S FEES, INCURRED DUE TO REMOVAL; **GRANTING** PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO REMAND; **DENYING** DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR IN THE ALTERNATIVE MOTION TO STRIKE AS **MOOT**; **DENYING** PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS AS **MOOT**

TEVRIZIAN, District Judge.

## I. *Background*

### A. **Factual Summary**

Plaintiff Toxic Injuries Corporation ("Plaintiff") brings this action against Defendants Safety–Kleen Corporation and Laidlaw Environmental Services, Inc. (collectively, "Defendants") for violations of the Safety Drinking Water and Toxic Enforcement Act (Cal. Health & Safety Code § 25249.6), violations of the Unfair Competition Act (Cal.Bus. & Prof.Code § 17200 et seq.) and declaratory relief.

Plaintiff provides the following summary of Safe Drinking Water and Toxic Enforcement Act in its Complaint:

In November 1986, California voters overwhelmingly approved an initiative to address growing concerns about exposure to toxic chemicals. (*Id.* at ¶ 10.) That initiative is officially known as the Safe Drinking Water and Toxic Enforcement Act, but is commonly referred to by its original name, "Proposition 65." (*Id.*)

Proposition 65 requires the Governor to publish a list of chemicals that are known to the State of California to cause cancer, birth defects or other reproductive harm. (*Id.* at ¶ 11.) Any company with ten or more employees that operates within the State or sells products in California must comply with the requirements of Proposition 65. (*Id.* at ¶ 12.) Under Proposition 65, businesses are prohibited from knowingly discharging listed chemicals into sources of drinking water and are required to provide a clear and reasonable warning before knowingly and intentionally exposing persons to a listed chemical. (*Id.*) Proposition 65 authorizes the Attorney General, district attorneys, and county and local prosecutors, as well as private citizens, to bring suit against violators to enjoin future violations and to obtain civil penalties for past violations. (*Id.* at ¶ 13.)

Plaintiff then alleges the following facts in the Complaint:

Plaintiff is a California public benefit corporation whose charitable purposes include the identification, prevention and treatment of toxic injuries. (Complaint, ¶ 1.) Plaintiff brings this action as a private attorney general in the public interest pursuant to Health and Safety Code § 25249.7 and Business and Professions Code § 17203. (*Id.*) Defendant Laidlaw Environmental Services, Inc. is the successor to Defendant Safety–Kleen Corporation. (*Id.* at ¶ 3.)

Since as early as January 1, 1997, Defendants have engaged in the business of providing a parts washer service to industrial and automotive customers in the State of California. (*Id.* at ¶ 20.) As part of this service, Defendants have leased to customers in California various models of Safety–Kleen parts washer machines and periodically delivered parts washer solvent to customers for use in degreasing metal parts with the machines. (*Id.*) During this same period, Defendants also provided a Customer Owned Machine Service ("COMS"), whereby they delivered Safety–

Kleen parts washer solvents to customers who had parts washer machines made by other companies. (*Id.*)

The solvents which Defendants deliver to its customers in California for use in said machines are either virgin or recycled petroleum hydrocarbon products, which are variously known as mineral spirits, Stoddard solvent, petroleum naphtha, and refined petroleum distillates. (*Id.* at ¶ 22.) The most common solvent that Defendants delivered to their California customers was a recycled solvent called "Safety–Kleen 105 solvent," because it has a nominal flashpoint of 105 degrees Fahrenheit. (*Id.*) This solvent is especially hazardous, because it is contaminated with numerous toxic chemicals which are not indigenous to the crude oil from which the virgin petroleum hydrocarbon solvents are refined. (*Id.*) The petroleum hydrocarbon solvents that Defendants provide to its customers in California contain more than 1,000 different chemicals, many of which are known to California to cause cancer and/or reproductive toxicity and which have been so designated on the list of such chemicals that has been published by the Governor of California. (*Id.*)

In describing "occupational exposure," Plaintiff claims that exposure to individuals occurred every time they operated the parts washer machines, because the machines generated aerosols from the parts washer solvents, volatile organic compounds evaporated from the parts washer solvents during their ordinary and intended use, and parts washer solvents splashed on the skin of workers scrubbing parts with the solvent to remove grease and particulate matter. (*Id.* at ¶ 25.) The violations occurred because individuals operating the parts washer machines were exposed to parts washer solvents and the labels that Defendants placed on the parts washer machines neither identified listed chemicals nor provided individuals operating the parts washer machines within the State clear and reasonable warning prior to exposing them to the carcinogens and reproductive toxicants in the solvents. (*Id.* at ¶ 26.) The violations are numerous and have occurred simultaneously from September 1, 1987 (the date on which Proposition 65 went into effect) to the present. (*Id.* at ¶ 27.) The timing of the violations is such that they occurred every moment that every individual within California operated a Safety–Kleen parts washer machine containing any one or more of the several Safety–Kleen parts washer solvents. (*Id.* at ¶ 28.)

All of the parts washer solvents contained petroleum hydrocarbon fractions and most contained chlorinated solvents as well. (*Id.* at ¶ 29.)

Defendants allegedly concealed from Californians and Plaintiff that their products contained chemicals known to the state to cause cancer and reproductive harm. (*Id.* at ¶ 30.) Defendants misrepresented the toxic hazards of their products to Plaintiff and Californians by preparing documentation stating that the products were "by definition slightly toxic to relatively non-toxic." (*Id.* at ¶ 33.) Defendants' concealment of the carcinogenic and reproductive toxic hazards of their products was sufficiently complete that Plaintiff did not know, nor in the exercise of reasonable care could Plaintiff have known, that Defendants were knowingly and intentionally exposing Californians to carcinogens and reproductive toxins in violation of Proposition 65, until Plaintiff discovered such at the end of the summer of 1998. (*Id.* at ¶ 34.)

**B.  Procedural Summary**

On April 2, 1999, Plaintiff filed the Complaint in the Superior Court of California for the County of Los Angeles. On May 7, 1999, Defendants filed a Notice of Removal of Civil Action Under 28 U.S.C § 1441(b) (Diversity).

On May 17, 1999, Plaintiff filed a Motion to Remand Action to Los Angeles Superior Court and For an Award of Just Costs and Expenses, Including Attorney's Fees In-

curred Due to Removal, which is currently before this Court. On this same date, Defendants filed a Motion to Dismiss for Failure to state a Claim Upon Which Relief Can Be Granted (F.R.C.P.12(b)(6)) or In the Alternative Motion to Strike (F.R.C.P.12(f)), which is also currently before this Court.

## II. *PLAINTIFF'S MOTION TO REMAND ACTION TO LOS ANGELES SUPERIOR COURT*

### A. *Plaintiff's Request for Judicial Notice*

Plaintiff requests that this Court take judicial notice of the following orders in the federal cases: (1) Order Remanding Action and Granting Fees and Costs, *As You Sow v. The Sherwin–Williams Company,* No. C 93–3577 VRW, 1993 WL 560086 (N.D.Cal.1993) 1993 U.S.Dist. Lexis 18310; and (2) Order Granting Plaintiff's Motion to Remand and Denying Request for Fees and Costs, *As You Sow v. Shell Oil Company,* No C–97–2395 SI (N.D.Cal. 1997).

Federal Rule of Evidence 201(d) provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." A judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable or accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

■ This Court finds that these cases are the proper subject of judicial notice. This Court notes, however, that the applicability of the analysis and holdings in those cases to this current action is limited to what this Court discusses below. Accordingly, this Court **grants** Plaintiff's request for judicial notice.

### B. *Standard*

■ At any time prior to final judgment, the federal court may remand the case to the state court for a defect in removal procedures or for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A plaintiff's motion for remand effectively forces a defendant, the party who invoked the federal court's removal jurisdiction, to prove whatever is necessary to support the petition, e.g., the existence of diversity, the amount in controversy, or the federal nature of the claim. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). In ruling on a remand motion, this Court ordinarily determines removability from the complaint as it existed at the time of the removal, together with the removal notice. Federal courts are instructed to "strictly construe the removal statute against removal jurisdiction." *Id.* at 566.

### C. *Plaintiff Lacks Article III Standing*

Plaintiff contends that citizens who claim no personal harm but merely sue on behalf of the public lack Article III standing.

■ The jurisdiction of federal courts is defined and limited by Article III of the Constitution. *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). Article III, Section 2 of the United States Constitution sets forth three different terms to define jurisdiction in the federal courts—"Cases, in Law an Equity," "Cases," and "Controversies." "It is well settled that federal courts may act only in the context of a justiciable case or controversy." *Securities and Exchange Com'n v. Medical Committee for Human Rights,* 404 U.S. 403, 407, 92 S.Ct. 577, 580, 30 L.Ed.2d 560 (1972). It is presumed that a cause lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (internal citations omitted).

■■ Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). It is an integral component of subject matter jurisdiction. Bender v. Williamsport Area School District, 475 U.S. 534, 541–43, 106 S.Ct. 1326, 1331–32, 89 L.Ed.2d 501 (1986). The standing inquiry involves both constitutional and prudential limitations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.1983). The Supreme Court has established that the "irreducible constitutional minimum" of standing contains three elements: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. The three prudential limitations are: (1) the plaintiff must assert his own rights and not rest his claim to relief on the legal rights or interests of third parties; (2) even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the plaintiff's injury must not be shared in equal measure by all or a large class of citizens—if so it represents a generalized grievance not normally appropriate for a judicial resolution, and (3) the plaintiff's interest must arguably be within the zone of interests intended to be protected or regulated by the statute or constitutional guarantee in question. *McMichael,* 709 F.2d at 1269.

■ Plaintiff argues that the Complaint in this case does not allege injury, causation or damages, all of which are required for standing. Specifically, Plaintiff asserts that this case does not satisfy the threshold requirement of an injury in fact. This Court agrees. The Complaint states that by exposing persons to the toxic chemicals, Defendants have exposed persons to injuries "to such a degree that the necessity monitoring of their health is a reasonably certain consequence of the exposure." *See* Complaint at ¶ 67. Such allegations do not suffice to allege an "injury in fact" to Plaintiff. Rather, they talk about "exposure" to chemicals which are capable of causing injuries. They state that Defendants have exposed such persons to the risk of developing certain diseases so that their health should be monitored. In other words, individuals who have been exposed to Defendants' solvents have not been injured but are at an increased risk of developing injuries in the future. As such, the alleged injury is not concrete and particularized. Importantly, not only is the Complaint devoid of injuries in fact to individuals, but it is also devoid of injuries in fact to Plaintiff. In support of this motion, Plaintiff submits a declaration of one of Plaintiff's board members which states that "[n]either Toxic Injuries Corporation nor any of its directors has suffered any personal injury, property damage, or any monetary loss as a result of any of the acts or omissions of Safety–Kleen Corporation which are the subject of this lawsuit." (Freeman Decl., ¶ 5.) Mr. Freeman further states that "[i]n this case Toxic Injuries Corporation does not claim that Safety–Kleen Corporation caused it to suffer any harm. Nor has Toxic Injuries Corporation ever claimed that Safety–Kleen Corporation caused it to suffer any harm." (*Id.* at ¶ 6.) Thus, this Court finds that Plaintiff cannot meet the constitutional limitation of an injury in fact required for Article III standing. "[T]here must be a distinct and palpable injury to the plaintiff." *McMichael,* 709 F.2d at 1270.

■ In addition, this Court finds that Plaintiff cannot meet a prudential limitation required for Article III standing. Specifically, Plaintiff does not assert its own rights. Rather, it rests its claim to

relief on the legal rights or interests of third parties. The Complaint alleges that Plaintiff is a public benefit corporation that does not sue to vindicate any rights of its own but brings suit "as a private attorney general on behalf of the general public" and "in the public interest." (Complaint, ¶ 1.) It consistently makes reference to third parties; it alleges, among other things, that "exposures to individuals occurred every time they operated the parts washer machines" (Complaint, ¶ 25); "Defendants knowingly and intentionally exposed individuals to its parts washer solvents" (Id. at ¶ 38.); and "Defendants knowingly and intentionally exposed numerous customers, employees, residents, and other persons in the State of California to vapors, aerosols, and particles of parts washer solvents, including toxic and carcinogen chemicals, in the course of violating the foregoing laws" (Id. at ¶ 66). As such, the Complaint is devoid of any allegations discussing injury to Plaintiff, and, as set forth above, Plaintiff claims to have suffered no injuries. Plaintiff merely asserts the legal rights and interests of third parties.

■ Defendants contend that Plaintiff does allege an injury. Defendants appear to believe that Plaintiff's use of the word "injury" in the Complaint proves that Plaintiff suffered an injury. This argument is without merit. First, Defendants point to the fact that the name of Plaintiff, "Toxic Injuries," discloses its true purpose. This Court cannot find that an injury in fact has been sufficiently alleged to find standing just because the name of Plaintiff contains the word "injury." Second, Defendants point to various paragraphs of the Complaint and argue that they explain the alleged injuries. With respect to Paragraphs 20–24, this Court finds that none of these paragraphs allege any injuries in fact. Rather, they lay the foundation of the claims. With respect to Paragraphs 25–28 and 67, these paragraphs confirm what this Court has stated above—Plaintiff merely alleges individuals' exposure to toxic injuries and not a concrete and particularized invasion of Plaintiff's legally protected interests.

■ Defendants also argue that since Plaintiff alleges that medical monitoring is necessary, injuries are presumed to have occurred. They rely on the case of *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, for the proposition that Plaintiff cannot allege that individuals have been injured so as to require medical monitoring and also claim that there is no injury. This Court disagrees with Defendants' reading of the *Potter* case. In *Potter*, a toxic exposure action, the plaintiff brought a claim for medical monitoring, seeking to recover the cost of future periodic medical examinations intended to facilitate early detection and treatment of disease caused by a plaintiff's exposure to toxic substances. *Id.* at 1005, 25 Cal.Rptr.2d 550, 863 P.2d 795. The Court held that a reasonably certain need for medical monitoring is an item of damage for which compensation should be allowed. *Id.* at 1006–1007, 25 Cal.Rptr.2d 550, 863 P.2d 795. The Court stated that medical monitoring "is simply a compensable item of damage when liability is established under traditional tort theories of recovery." *Id.* In reaching this decision, the Court specifically found that recovery of medical monitoring damages is not contingent upon a showing of a present physical injury or upon proof that injury is reasonably certain to occur in the future. *Id.* at 1006, 1008, 25 Cal.Rptr.2d 550, 863 P.2d 795. Courts must merely "ascertain the probability that the far less costly remedy of medical supervision is appropriate." *Id.* at 1008, 25 Cal.Rptr.2d 550, 863 P.2d 795. Thus, the Court held as follows:

> [M]edical science may necessarily and properly intervene in the absence of physical injury where there is a significant but not necessarily likely risk of serious disease. Accordingly, ... we hold that the cost of medical monitoring is a compensable item of damages where

the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and that recommended monitoring is reasonable.

*Id.* at 1009, 25 Cal.Rptr.2d 550, 863 P.2d 795. Thus, Plaintiff's request for medical monitoring does not presume that an injury in fact has occurred. Indeed, under *Potter,* proof of neither present nor future injury is required in order to recover medical monitoring costs. Moreover, as set forth above, Plaintiff seeks medical monitoring for exposed individuals, not for itself. As such, Plaintiff's claim for medical monitoring cannot establish an injury giving rise to a case or controversy under Article III, since "the plaintiff must assert his own rights and not rest his claim to relief on the legal rights or interests of third parties." *McMichael,* 709 F.2d at 1270.

Plaintiff cites to a case, *As You Sow v. The Sherwin–Williams Company,* 1993 WL 560086 (N.D.Cal.1993), in support of its argument that federal courts lack jurisdiction over claims that allege violations of Proposition 65. While this decision is not binding upon this Court, this Court agrees with the analysis and finds it consistent with this Court's analysis set forth herein. In *As You Sow,* the plaintiff, a non-profit association "dedicated to, among other causes, the protection of the environment, promotion of human health and the improvement of consumer rights," brought an environmental enforcement action in California state court seeking injunctive relief and civil penalties against various businesses that manufacture, distribute, or sell spray paint or adhesive products which allegedly expose consumers to high levels of the reproductive toxin, toluene. The plaintiff claimed that defendants failed to provide adequate warnings as required under the California Health and Safety Code section 25249.6 and engaged in unfair competition and misleading advertising in violation of California Business and Profes-

sions Code sections 17200 and 17500. *Id.* at *1. The Court found that the plaintiff did not satisfy even the minimum constitutional requirements for Article III standing. *Id.* at *2. It specifically found that the plaintiff had not alleged a "distinct and palpable injury" to itself. *Id.* It stated that the plaintiff's state created statutory right to act as a private attorney general does not confer injury on the plaintiff sufficient to satisfy federal standing requirements. *Id.* The Court went on and stated that even if the plaintiff suffered injury, the defendants could not satisfy their burden of establishing plaintiff's standing since plaintiffs need to have suffered an "injury in fact." *Id.* at *3. The Court found that the complaint was devoid of any allegations specifying the "particularized" nature of the harm or whether the harm affected the plaintiff "in a personal and individual way." *Id.*

Defendants attempt to distinguish the *As You Sow* case; however, this Court finds their arguments unpersuasive. Defendants argue that the plaintiff in *As You Sow* sought injunctive relief and civil penalties; whereas, in this case, Plaintiff seeks medical monitoring. Plaintiff in this case does seek injunctive relief and civil penalties. *See* Complaint at p. 20. In any case, the holding in *As You Sow* was not based on the relief sought by the plaintiff but rather on the fact that the plaintiff had not alleged an individual particularized injury. Defendants also argue that the plaintiff in *As You Sow* brought an environmental enforcement action; whereas, in this case, Plaintiff brings an occupational exposure action. This Court finds that this distinction is artificial, and in any event, it does not change the analysis and outcome of the case.

Plaintiff also cites to another case, *Mangini v. R.J. Reynolds Tobacco Co.,* 793 F.Supp. 925 (N.D.Cal.1992), in support of its argument that federal courts lack jurisdiction over claims that allege violations of the Unfair Competition Act. Again, while not binding on this Court, this Court finds

this case instructive and consistent with this Court's reasoning. In *Mangini*, the plaintiff, pursuant to the private attorney general provision of the California code, brought a suit on behalf of the California public alleging violations of the Federal Cigarette Labeling and Advertising Act and California Business and Professions Code. On a motion to remand, the Court found the plaintiff did not have standing. The defendant contended that the mere violation of the state statute, which confers standing on plaintiff in state court, rose to the level of Article III injury. *Id.* at 929. The Court disagreed and stated that the Supreme Court cases have held that federal statutes may confer standing where none would otherwise exist. However, the Court acknowledged that no authority existed which suggests that state legislatures may expand the standing in federal courts, even in a diversity case. *Id.* It stated: "It is quite another thing to suggest that the states have the same power to waive by statute the prudential, or more problematically, the constitutional limitations on standing in federal court and, by way of a state created right, confer injury in the Art. III sense where none would otherwise exist." *Id.*

■■■ Defendants unconvincingly attempt to distinguish the *Mangini* case. They claim that Plaintiff has independent standing to bring the subject complaint. However, as set forth herein, Plaintiff does not allege that it has suffered any injuries in fact. Defendants argue that the underlying basis for Plaintiff's standing to sue in federal court is different from the plain-

tiff's standing in *Mangini*. This argument misses the point of the *Mangini* case. While Defendants' arguments here may be different than the arguments presented by the defendants in the *Mangini* case, the analysis does not change. The Court must consider whether the plaintiff can satisfy the constitutional and prudential limitations on standing in federal court.[1]

### D. *Plaintiff Lacks Associational Standing*

Defendants contend that Plaintiff does not sue on behalf of the general public. They state that Plaintiff sues to recover for injuries to its "members." They conclude that Plaintiff has associational standing as an association suing on behalf of its members.

Plaintiff opposes Defendants' contention that Plaintiff does not sue on behalf of the general public. First, Plaintiff points to the applicable statutes and states that in order to bring this case as a private attorney general on behalf of the general public, Plaintiff need not allege that Defendants violated the statutes as to every member of the public. This Court agrees. Health & Safety Code section 25249.6 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual...." Further, Section 25249.7 provides that "[a]ctions pursuant to this section may be brought by any person in the public interest." Likewise, unfair competi-

---

1. As set forth by Plaintiff, this Court also lacks jurisdiction to adjudicate Plaintiff's cause of action for declaratory relief. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a). The "actual controversy" requirement is the same as "case or controversy" requirement of Article III. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937);

*Societe de Conditionnement En Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 942 (9th Cir.1981). With respect to its declaratory relief claim, Plaintiff incorporates the allegations of the other claims, states that Defendants dispute them and requests the Court to declare the rights and obligations of the parties. Since neither Proposition 65 nor the Unfair Competition Act claims present a case or controversy over which this Court can assert jurisdiction under Article III, the derivative declaratory relief claim likewise does not establish federal jurisdiction.

tion is defined in the Unfair Competition Act as including "any unlawful, unfair or fraudulent business act or practice...." Bus. & Prof.Code § 17200. The Unfair Competition Act can be based on a single transaction. *See Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 968 n. 3, 69 Cal.Rptr.2d 623 ("The plain meaning of the [1992] amendment, as enacted, is that the UCA now covers single acts of misconduct.").

Plaintiff also presents testimony of Defendant's Vice–President of Marketing wherein he stated that as of this past fall, Defendants had about 50,000 machines in service in California. Plaintiff concludes that since about two workers use each machine per day, Defendants have exposed about 100,000 workers in the State of California to carcinogens in its solvents per day. Thus, contrary to Defendants' arguments that Plaintiff is suing to recover for injuries to its "members" rather on behalf of the general public, Plaintiff has sufficiently plead that it brings this action on behalf of the general public.

■■■ Next, Plaintiff argues that it does not have associational standing. An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *United Food and Commercial Workers v. Brown Group,* 517 U.S. 544, 551, 116 S.Ct. 1529, 1534, 134 L.Ed.2d 758 (1996). Plaintiff claims that neither the first nor third requirements are satisfied in this case. This Court agrees.

The members of Plaintiff have no standing to sue in their own right because, as set forth above, none of them has suffered any injury in fact. Defendants do not point to any allegations in the Complaint which state otherwise. Rather, Defendants state that Plaintiff alleged injuries

on behalf of individuals who were exposed in their workplaces to Defendants' solvents. This allegation states that *individuals* were exposed, not *members* of Plaintiff. Moreover, as stated above, Plaintiff has presented a declaration of one of Plaintiff's board members, which states that neither Plaintiff nor any of its directors has suffered any personal injury as a result of any of the acts or omissions of Defendants which are the subject of this lawsuit. As such, Plaintiff claims no interest different from that held by the public at large and no actual injury to any members of its organization. Thus, Plaintiff's individual members lack Article III standing in their own right.

Even if Plaintiff's individual members have standing to sue in their own right, the claim asserted and relief requested requires the participation of individual members in the lawsuit. *See Warth v. Seldin,* 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975) (damage claims requiring individualized proof require joinder of association members individually). Defendants do not even address this requirement. Thus, since Plaintiff cannot satisfy the first and third requirements, this Court finds that Plaintiff lacks associational standing to maintain this action on behalf of its members, and federal jurisdiction cannot be established on this basis.

### E. Consideration of the Eleventh Amendment Arguments Is Not Necessary

Plaintiff also contends that the assertion of federal jurisdiction in this case would violate the Eleventh Amendment of the United States Constitution, which states that "[t]he judicial power ... shall not ... extend to any suit in law or equity ... against one of the United States by Citizens of another State...." It states that since the immunity granted by the Eleventh Amendment is an immunity from being made an involuntary party to an action in federal court, the Eleventh amendment has been interpreted to apply to cases

where the state is a plaintiff in an action commenced in state court which is removed to federal court by the defendant. It argues that the State of California should be deemed the Plaintiff in this case. It concludes that because of the jurisdictional bar of the Eleventh Amendment, this Court does not have original jurisdiction over this action absent consent of the State.

Defendants respond that the Eleventh Amendment does not bar the Court's jurisdiction over this case because the State of California is not a real party in interest and the suit is not being brought against the State of California.

In light of this Court's findings set forth above, this Court has determined that Plaintiff lacks Article III standing. As such, this Court does not need to address these additional arguments.[2]

### F. *Conclusion*

The Complaint in this case provides no basis for finding that Plaintiff has standing in federal court. Defendants, as the party invoking this Court's jurisdiction, has not established otherwise. Since Plaintiff lacks standing, this Court has no subject matter jurisdiction and must remand the case to state court under 28 U.S.C. § 1447(c). In doing so, this Court is mindful of the mandate to strictly construe the removal statute against removal jurisdiction. Accordingly, this Court **grants** Plaintiff's Motion to Remand Action to the Superior Court of the State of California for the County of Los Angeles and hereby remands this action to the Los Angeles Superior Court of the State of California for the County of Los Angeles.

### G. *An Award of Costs, Including Attorney's Fees Is Not Warranted*

Plaintiff requests an award of just costs, including expenses and attorney's fees in the amount of $13,800. It sets forth two reasons for such an award: (1) based on established law, there was no objectively reasonable basis for the removal of this action and (2) Defendants' attorneys removed this action even after Plaintiff's counsel faxed them a lengthy letter explaining why this case was not removable to federal court notwithstanding diversity. Plaintiff also claims that pursuant to Federal Rule of Civil Procedure 11, a defendant's attorneys are subject to sanctions for removing an action to federal court without an objectively reasonable basis for doing so.

Defendants claim that they have a made a good faith removal to this Court based on the underlying factual allegations in the Complaint. They point to a letter which they sent to opposing counsel prior to removal wherein they expressed their purpose for removal. In this letter, Defendants' counsel acknowledged the cases cited by Plaintiff; however, they state that "[g]iven the fact the United States Supreme Court and the Ninth Circuit have not addressed this issue, we believe it is in our clients' best interest to pursue removal of the action."

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Attorney fees may be awarded for an improper removal even absent a finding of bad faith. *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th Cir.1992). The award of fees is within the discretion of the district court. *Id.*

■ This Court, in the exercise of its discretion, declines to award attorney's fees to Plaintiff. While this Court does sympathize with the expense incurred by Plaintiff since removal, including opposing Defendants' motions to dismiss and strike the complaint, this Court cannot find that

---

**2.** Similarly, this Court does not need to address the parties' claims regarding service of the Notice of Removal.

Defendant's removal was so obviously barred as to warrant an award. Indeed, this case involved complicated issues. Although Defendants' arguments were ultimately unpersuasive, they were not frivolous or an improper basis for removal. Accordingly, this Court **denies** Plaintiff's request for an award of just costs and expenses, including attorney's fees, incurred due to removal.

### III. *DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE*

In light of this Court's remand, Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted or in the Alternative Motion to Strike is **moot**. Therefore, this Court **denies** Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted or in the Alternative Motion to Strike **without prejudice** for proper refiling in state court.

**IT IS SO ORDERED.**