Samantha **BOULDRY, Eula Huff, Sandra Lorenz, and Janet Roberts on behalf of themselves and the class of all others similarly situated, Plaintiffs,**

v.

**C.R. BARD, INC., a corporation of the State of New Jersey and Bard Peripheral Vascular, Inc., a corporation of the State of Arizona, and Doe Defendants 1 through 20, Inclusive, Defendants.**

Case No. 12–80951–CIV.

United States District Court,
S.D. Florida.

Dec. 18, 2012.

---

Joseph R. Johnson, Babbitt Johnson & Osborne, West Palm Beach, FL, Ramon Rossi Lopez, Troy A. Brenes, Lopez McHugh, LLP, Newport Beach, CA, for Plaintiffs.

Garth Thomas Yearick, Carlton Fields, P.A., West Palm Beach, FL, Michael K. Brown, Reed Smith, LLP, Los Angeles, CA, Steven J. Boranian, Reed Smith, LLP, San Francisco, CA, John Anderson Camp, Carlton Fields, P.A., Miami, FL, for Defendants.

## ORDER ON PLAINTIFFS' MOTION TO REMAND

ROBIN S. ROSENBAUM, District Judge.

This matter is before the Court on Plaintiffs' Motion to Remand to State Court ("Motion to Remand") [D.E. 13]. The Court has considered Plaintiffs' Motion and all supporting and opposing fil-

ings. For the reasons set forth below, the Court now denies Plaintiffs' Motion to Remand.

## I. BACKGROUND

On July 26, 2012, Plaintiffs filed a four-teen-count, class-action Complaint in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("state court"). *See* D.E. 1–3. In their Complaint, Plaintiffs allege that they were each implanted with inferior vena cava ("IVC") filters manufactured by Defendants. D.E. 1–3 at ¶¶ 3–6. They further state that Defendants fraudulently concealed "material facts concerning hazards associated" with the IVF filters, such as risk of filter failure that could lead to death, hemorrhage, or other injuries. *Id.* at ¶¶ 26–27. Although the filters implanted in Plaintiffs "[have] not yet fractured, migrated, or otherwise failed," Plaintiffs "seek[ ] to establish a medical monitoring fund or to otherwise recover the cost of providing medical monitoring to the proposed class of plaintiffs." *Id.* at ¶¶ 1–6.

Shortly after Plaintiffs filed their Complaint, Defendant removed the action to this Court, pursuant to the Class Action Fairness Act of 2005. *See* D.E. 1. Plaintiffs then filed the pending Motion to Remand. *See* D.E. 13. In their Motion, Plaintiffs argue that this Court lacks subject-matter jurisdiction over their claims because "[t]he Eleventh Circuit has not recognized that an increased risk of future injury is an injury-in-fact under Article III [of the United States Constitution]...." *Id.* at 6. In addition, Plaintiffs contend that their Complaint "does not a support a conclusion that there is a substantial probability that harm will occur to each Plaintiff." Accordingly, they argue, "this Court lacks subject-matter jurisdiction [over] Plaintiffs' action" and should remand it to state court. *Id.*

In response, Defendants assert that "[w]hile the Eleventh Circuit has not yet squarely addressed the issue of Article III standing in the context of a future-injury medical-monitoring claim, authority from several circuits around the nation weighs heavily in favor of determining that Article III standing and jurisdiction exist in this case." D.E. 16 at 2. Defendants urge the Court to concur with federal courts that have "accept[ed] the rule that an alleged increased risk of future harm satisfies Article III's injury requirement for purposes of standing, especially in medical-monitoring cases involving implanted medical devices...." *Id.* Finally, Defendants note that Florida state law "recognizes that medical-monitoring plaintiffs have suffered an economic injury-in-fact...." *Id.* at 7.

## II. DISCUSSION

### A. Applicable Standard on a Motion to Remand

Federal courts enjoy only limited jurisdiction. *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.2005), *cert. denied,* 546 U.S. 872, 126 S.Ct. 377, 163 L.Ed.2d 164 (2005). On a motion for remand, the removing defendant shoulders the burden of demonstrating that federal jurisdiction lies in the case. *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294 (11th Cir.2008) (citing *Leonard v. Enter. Rent a Car,* 279 F.3d 967, 972 (11th Cir.2002)). In accomplishing this task, the removing defendant must overcome the narrow construction of removal statutes. *See Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1373 (11th Cir.1998). "The strict construction of removal statutes ... prevents 'exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal,' ... a result that is costly not just for the plaintiff, but for all the

parties and for society when the case must be relitigated." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (quoting *Cowart Iron Works, Inc. v. Phillips Constr, Co., Inc.,* 507 F.Supp. 740, 744 (S.D.Ga.1981) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3721)). Thus, "[a]ny doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Adventure Outdoors,* 552 F.3d at 1294 (citing *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996)).

█ Defendants premise federal jurisdiction in this case on the Class Action Fairness Act of 2005 ("CAFA"), which provides, in relevant part, "A class action may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453.[1] "CAFA amend[ed] the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d)." *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1193 (11th Cir.2007). "Subject to certain exceptions . . . CAFA provides federal courts with jurisdiction over class actions provided that: the number of plaintiffs in all proposed plaintiff classes exceeds one hundred, . . . any member of the plaintiff class is diverse from any defendant, . . . and the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of interests and costs." *Id.* at 1193–94. In their Notice of Removal, Defendants assert that the instant action meets CAFA's requirements. *See* D.E. 1.

## B. Injury in Fact

█ Although Plaintiffs do not dispute Defendants' argument that this action meets CAFA's removal requirements, Plaintiffs contend that they lack Article III standing to pursue their claims in federal court. *See* D.E. 13. Article III of the United States Constitution confines federal-court jurisdiction to actual "cases" and "controversies." U.S. Const., art. III, § 2. To satisfy constitutional standing requirements under Article III, a plaintiff must demonstrate three factors:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Bischoff v. Osceola Cnty., Fla.,* 222 F.3d 874, 884 (11th Cir.2000) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Here, Plaintiffs take issue with the first requirement, asserting that an increased risk of future injury does not constitute an injury in fact.

█ The Eleventh Circuit has not addressed whether risk of future injury satisfies the Constitution's injury-in-fact requirement. As Plaintiffs acknowledge, however, federal courts nationwide have concluded that such risk is sufficient to confer standing under Article III. *See, e.g., Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 634 (7th Cir.2007) ("[T]he injury-in-fact requirement can be satisfied by a threat of future harm or by an act which

---

1. 28 U.S.C. § 1446 provides the proper procedure for removal of a civil action.

harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions.") (footnote omitted); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947–48 (9th Cir.2002) (holding that "the possibility of future injury may be sufficient to confer standing on plaintiffs" and noting that "threatened injury constitutes injury-in-fact.") (internal quotations omitted); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir.2000) (en banc) ("Threats or increased risk ... constitutes cognizable harm.").

Moreover, courts that have considered the issue specifically in the context of medical monitoring have held that an alleged increased risk of future harm satisfies Article III's injury-in-fact requirement. *See, e.g., Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 574–75 (6th Cir. 2005) (concluding that standing was present where a defective medical implement presented an increased risk of future health problems); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 861 (3d Cir. 1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991) (holding that persons who had been exposed to polychlorinated biphenyls, a toxic substance, could sue for medical monitoring expenses because "regardless of whether all plaintiffs alleged demonstrable physical injury, they all clearly alleged monetary injury."); *Carlough v. Amchem Prods., Inc.*, 834 F.Supp. 1437, 1452 (E.D.Pa.1993) (holding that plaintiffs who were exposed to asbestos but had not yet developed asbestos-related conditions had standing to bring suit for injuries); *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 287 n. 37 (N.D.Ohio 2007) ("Although the defendants no not argue otherwise, it is also worth noting that the [plaintiffs] clearly have standing under Article III to assert their claims for medical monitoring.") Other federal courts have reached the

merits of medical-monitoring cases, implicitly accepting that the plaintiffs had standing to bring their claims. *See, e.g., In re St. Jude Med., Inc.*, 2003 WL 1589527 (D.Minn. Mar. 27, 2003).

Nor, as Defendants suggest, does *Toxic Injuries Corp. v. Safety–Kleen Corp.*, 57 F.Supp.2d 947 (C.D.Cal.1999), reach or even support the opposite conclusion. *See* D.E. 13 at 4, 11–16. *Toxic Injuries* differs materially from the instant case. In *Toxic Injuries*, the sole plaintiff was an association suing the defendant on behalf of the general public for yet-un-incurred injuries that unidentified third parties might experience as a result of being exposed to chemicals that the defendant used in conducting its business. The district court concluded that the plaintiff lacked standing because it sought to vindicate the rights and interests of third parties who were not parties to the lawsuit—not because yet-un-incurred injury in individuals subjected to increased risk of injury did not constitute an "injury-in-fact" under Article III standing analysis. *See id.* at 952–55. Nor could the district court find associational standing because the plaintiff did not allege that any of its members were exposed to the allegedly toxic chemicals. *See id.* at 956. The pending case is entirely different. Unlike the *Toxic Injuries* plaintiff, which, itself, was not exposed to the allegedly toxic chemicals, Plaintiffs here all allege that they were implanted with the allegedly defective IVCs and therefore face increased risk of future harm.

■ These federal cases addressing the issue of standing in a case such as this one are in alignment with Florida law, which recognizes that an individual generally has standing if he has "a sufficient stake in a justiciable controversy." *Peregood v. Cosmides*, 663 So.2d 665, 668 (Fla. 5th DCA 1995) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d

636 (1972)). Under Florida law, a plaintiff must also allege a palpable, distinct injury, economic or otherwise, that can be redressed by the relief sought. *Id.* Moreover, Florida has recognized the viability of medical-monitoring claims. As one Florida court observed, "Although it is true that plaintiffs in cases such as these have yet to suffer physical injuries, it is not accurate to say that no injury has arisen at all." *Petito v. A.H. Robins Co.,* 750 So.2d 103, 105 (Fla. 3d DCA 1999). Even if physical harm has not yet arisen, "[t]he injury in a medical monitoring case is defined as the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm." *Wyeth, Inc. v. Gottlieb,* 930 So.2d 635, 640 (Fla. 3d DCA 2006).

The Court agrees with these federal and state decisions. As the *Sutton* Court reasoned, "A defective medical device embedded in an individual's body" poses a serious threat to that individual's health. *Sutton,* 419 F.3d at 572. Under such circumstances, "the damage has been done; we just cannot yet quantify how it will manifest itself." *Reilly v. Ceridian Corp.,* 664 F.3d 38, 43 (3d Cir.2011). Plaintiffs argue in their Complaint that "they are at a significant and likely risk for future device failure." D.E. 1 at ¶ 90. The Court is unpersuaded by Plaintiffs' attempts in their Motion to Remand to downplay the alleged risk as "possible, [but] not substantially probable...." *See* D.E. 13 at 13. Plaintiffs appear to contend that they would possess standing only if they had alleged a future risk of injury that is greater than fifty percent. The decisions cited above, however, did not require, as a threshold, an allegation that future harm was more likely than not. The Court agrees with the observation in *Sutton* that standing requirements are met if a plaintiff "alleges an increased risk of harm when comparing those individuals implanted with the [allegedly defective] device to

those undergoing traditional surgery." *Sutton,* 419 F.3d at 572.

Moreover, as the *Paoli* Court noted, the plaintiffs in a medical-monitoring claim allege monetary injury, even if physical injury has not manifested. Indeed, Plaintiffs assert in their Complaint that they "will be required to incur future expense" as they undergo various medical procedures to ensure that the IVC filters implanted in their bodies have not failed or fractured. *See* D.E. 1–3 at ¶ 232. Based on these allegations, standing exists under either federal or Florida law.

Nor does the Court agree that it must accept as controlling the Complaint's allegations that Plaintiffs lack standing. *See* D.E. 13 at 7–8. These allegations constitute legal conclusions, and the Court is not bound by them. *Cf. Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (holding in the context of considering a motion to dismiss, "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The Court is not required to accept the conclusion that Plaintiffs lack federal-court standing simply because Plaintiffs baldly assert that in their Complaint. Removal statutes would be rendered meaningless if plaintiffs could avoid removal simply by pleading in their complaints that they would lack standing in federal court.

Finally, the Court disagrees with Plaintiffs' assertion that the Eleventh Circuit "expressed skepticism that increased risk of harm is an injury-in-fact" when it decided *Resnick v. AvMed, Inc.,* 693 F.3d 1317 (11th Cir.2012). D.E. 13 at 10. In *Resnick,* a case involving identity theft, the court noted that some of its sister circuits had concluded "that even the threat of future identity theft is sufficient to confer standing...." *Id.* at 1323 n. 1. However, because the *Resnick* plaintiffs alleged actu-

al—not speculative—identity theft, the court stated that it "need not address the issue of whether speculative identity theft would be sufficient to . confer standing." *Id.* This language can hardly be interpreted as expressing skepticism. Accordingly, the Court concludes that Defendants have met their burden of demonstrating that this Court has jurisdiction over Plaintiffs' claims.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand [D.E. 13] is hereby **DENIED.**