GALT G/S, Plaintiff,

v.

HAPAG–LLOYD AG; Can Transport Inc.; Crystal Ice & Cold Storage Co.; D & D Services, Defendants-third party-plaintiffs-Appellees,

v.

SAFEWAY STORES, INC., Third-party-defendant-Appellant.

GALT G/S, Plaintiff,

v.

HAPAG–LLOYD AG; Can Transport Inc.; Crystal Ice & Cold Storage Co.; D & D Services; Europe–North America Services, Defendants–Appellants,

v.

SAFEWAY STORES, INC., Third-party-defendant-Appellee.

Nos. 93–16521, 93–16601.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1994.

Decided April 21, 1995.

Opinion Withdrawn June 28, 1995.

Filed July 7, 1995.

James Attridge, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, for third party defendant-appellant and cross-appellee, Safeway Stores, Inc.

Rupert P. Hansen, Graham & James, San Francisco, CA, for defendants, third-party plaintiffs, appellees and cross-appellants Hapag–Lloyd A.G., Europe–North America Services, Crystal Ice & Cold Storage Co., Can Transport Inc., and D & D Services, Inc.

Before: FARRIS, BOOCHEVER, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

The district court awarded judgment to third-party plaintiff Hapag–Lloyd A.G. and against third-party defendant Safeway Stores after a nonjury trial of California law indemnification and subrogation claims. The third-party claims were ancillary to an admiralty cargo damage suit instituted by Galt G/S against Hapag–Lloyd. We reverse the judgment of the district court for lack of subject matter jurisdiction and remand for the district court to dismiss Galt's third-party subrogation claim against Safeway and determine whether diversity jurisdiction exists for Hapag–Lloyd's third-party indemnification claim against Safeway.

## I.

The admiralty action alleged that Hapag–Lloyd or one of three other carriers of a shipment of hams damaged the hams during the shipment. The International Trading Company (ITC) arranged in 1987 for the importation of 2160 tins of canned ham from a supplier in Aarhus, Denmark, and consigned them for delivery to Safeway Stores (Safeway). Safeway, more than a week after delivery, discovering that the ham was covered with ice, frozen, and thereby spoiled, notified ITC. ITC agreed to rescind the sale, notified Galt G/S (Galt), its insurer, and requested coverage in the amount of $53,243.21, the net loss.

Galt sued the four carriers that delivered the ham to Safeway, seeking recovery by way of subrogation: Hapag–Lloyd A.G. (Hapag–Lloyd), which had shipped the ham by sea from Denmark to Oakland, California; Can Transport, Inc., which delivered the unloaded ham by truck to Sacramento; Crystal Ice & Cold Storage, which stored it in Sacramento until; D & D Services delivered it by truck and unloaded it at Safeway's meat plant in Stockton. The ham sat in this plant in storage for eleven days before Safeway employees opened it and discovered that it was frozen.

Hapag–Lloyd assumed the tenders of the ground carriers' defenses. Hapag–Lloyd denied that any of the carriers had frozen the ham; it argued that Safeway employees froze the ham in the eleven days after receiving and before opening it. During discovery, Hapag–Lloyd found evidence indicating that the ham's temperature had never dropped below 28° F, its freezing temperature, during its ocean voyage and ground delivery. Hapag–Lloyd also discovered that Safeway's Stockton plant had both a cooler and a freezer, and that, in the four years between the freezing and the litigation discovery, Safeway employees had destroyed the record indicating in which room the ham had been stored.

The district court granted a motion by Hapag–Lloyd to implead Safeway as a defendant. Under Federal Rule of Civil Procedure 14(c) (Rule 14(c)), the district court tendered to Safeway the defenses of separate California law claims by Hapag–Lloyd and Galt. Galt's pendent claim was for recovery from Safeway, by way of subrogation, of ITC's loss from rescinding the consignment to Safeway. Hapag–Lloyd's ancillary claim was for indemnification from Safeway of the amount of any judgment against Hapag–Lloyd on the cargo damage claim in the principal action. The day before trial, Hapag–Lloyd paid Galt $13,500 to settle the principal cargo damage action and acquire

the assignment of Galt's subrogation claim against Safeway. Hapag–Lloyd's indemnification claim and Galt's subrogation claim (the latter now in Hapag–Lloyd's hands) went to a bench trial.

The district court ruled for Hapag–Lloyd on Galt's claim but not on its own. The court concluded that Safeway was liable for the entire $53,243.21 net loss to Hapag–Lloyd on the claim assigned by Galt. The court declined to consider Hapag–Lloyd's claim for indemnification for the costs of settling with Galt because Hapag–Lloyd had won on Galt's claim.

Safeway filed a timely notice of appeal; Hapag–Lloyd cross-appeals. Safeway appeals from the grant of the motion to implead it and from two trial issues. Hapag–Lloyd appeals from the district court's refusal to consider its claim for indemnification for its settlement costs.

## II.

■ We first inquire whether the district court correctly exercised subject matter jurisdiction over Safeway. We review *de novo* whether subject matter jurisdiction exists. *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 866–67 (9th Cir.1986). We may review issues regarding subject matter jurisdiction *sua sponte*. *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1303 (9th Cir.1975), *aff'd*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Safeway argues that ancillary jurisdiction did not exist over the third party claims against it. However, before we address ancillary jurisdiction, we inquire *sua sponte* whether admiralty or diversity jurisdiction provided the district court with an independent basis for federal subject matter jurisdiction over Safeway. *Cf. Joiner v. Diamond M*

*Drilling Co.*, 677 F.2d 1035, 1038–39 (5th Cir.1982).

### A.

■ We first inquire whether Galt and the transportation defendants' indemnity claims against Safeway should have sounded in admiralty.[1] Admiralty jurisdiction existed if Galt and the transportation defendants' injuries occurred on navigable waters and bore a sufficient relationship to traditional maritime activities. *See Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312, 314 n. 2 (9th Cir.1993).

■ We conclude that admiralty jurisdiction did not exist. The third party complaints allege that Safeway negligently stored the unloaded cans of ham in its freezer, ruining the hams. Galt allegedly deserves to pursue a subrogation claim against Safeway because it paid ITC insurance for the hams ruined by Safeway. The transportation defendants allegedly deserve indemnification because they faced litigation exposure for the damage to the hams, caused by Safeway. Neither Safeway's freezing the ham at its Stockton plant nor Galt or Hapag–Lloyd's resulting injuries (needless insurance payments and litigation exposure, respectively) occurred on navigable waters or related to traditional maritime activities.

### B.

■ The district court could have exercised jurisdiction over Safeway as to Hapag–Lloyd's third party complaint if the amount in controversy between Safeway and the transportation defendants exceeded $50,000 and Safeway and the transportation defendants have diverse citizenships. *See* 28 U.S.C. § 1332.[2] The district court acknowl-

---

1. We consider admiralty jurisdiction first because, if it existed, the district court should have applied admiralty indemnity law to the third party suits. In theory, Hapag–Lloyd still could have asserted state law indemnity claims against Safeway. However, a state court or a federal court sitting in diversity or ancillary jurisdiction would have been obligated to apply admiralty law, in "reverse-*Erie*" fashion, to those state law claims. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222–23, 106 S.Ct. 2485, 2494–95, 91 L.Ed.2d 174 (1986).

2. If the district court had exercised diversity jurisdiction over Safeway, however, Hapag–Lloyd could not have tendered Safeway with the defense of Galt's third party subrogation claim. Because jurisdiction on the indemnity claim would have been based on diversity rather than maritime jurisdiction, Rule 14(a) would have governed Hapag–Lloyd's impleader motion, not Rule 14(c). Rule 14(a), unlike Rule 14(c), does not allow a third party plaintiff to tender the

edged on the record that it did not have enough information before it to find diversity jurisdiction. We agree.

Hapag–Lloyd and the other carriers' third party complaint, on behalf of Galt and themselves, alleges:

¶ 3. ... Safeway was and is a corporation organized and existing under the laws of the State of Maryland with an office and place of business within the Northern District of California.

¶ 4. ... [T]he Transportation Defendants were and are corporations duly organized in states or countries other than the State of Maryland.

¶ 5. ... Galt G/S was and is a corporation duly organized in a country other than the United States.

These allegations do not set forth with specificity the principal place of business of any party. *See id.* § 1332(c)(1). On the facts alleged, Safeway and the other parties' citizenships may not be diverse. Galt's original admiralty complaint does not establish diversity because it pleaded no facts relating to states of citizenship. Diversity jurisdiction may exist, but not on these pleadings.

### C.

We now focus on ancillary jurisdiction, the basis for jurisdiction on which the district court actually relied. The district court concluded that the claims from Safeway arose from the same transaction or occurrence as the cargo damage claim and exercised ancillary jurisdiction accordingly. Having exercised jurisdiction, it then granted Hapag–Lloyd's motion to implead Safeway under Rule 14(c).

▮▮▮ Safeway was a pendent party because it was not already a party to the lawsuit when Hapag–Lloyd moved to implead it and because the district court had no independent basis for federal jurisdiction over it. Before the district court could implead Safeway under Rule 14(c), it needed to establish

that ancillary jurisdiction existed. Rule 14(c) could not provide the basis for jurisdiction. Fed.R.Civ.P. 82. Instead, the exercise of jurisdiction over the pendent and ancillary actions had to establish a constitutionally required minimal nexus to the principal action and find explicit authorization in a jurisdiction-conferring statute. *See Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (determining whether ancillary jurisdiction existed by analyzing the constitutional minimum for jurisdiction and the jurisdictional statute at issue, 28 U.S.C. § 1346(b), but not the procedure for impleader, Rule 14(a)).

▮▮▮ Galt and Hapag–Lloyd's claims must have been part of the same constitutional "case" as Galt's cargo damage claim. At a minimum, the indemnification claims must have arisen from the same transaction or occurrence as the cargo damage claim. *See Finley,* 490 U.S. at 549, 109 S.Ct. at 2006–07. If the claims all had been part of the same constitutional case, ancillary jurisdiction would have existed if the language or the legislative history of the statute conferring jurisdiction over the cargo damage claim, in this case 28 U.S.C. § 1333, could have overcome the presumption that the statute does *not* confer jurisdiction over a pendent party like Safeway. *See Finley,* 490 U.S. at 549, 552, 554, 109 S.Ct. at 2006–07, 2008, 2009–10.[3]

▮▮▮ We conclude that the cargo damage claim and the ancillary claims arise from different occurrences. The alleged occurrence in the cargo damage claim is whether Hapag–Lloyd or one of the carriers mishandled the ham during shipment; the alleged occurrence in the indemnification claim is whether Safeway stored the ham improperly. The two occurrences are separated by the carriers' relinquishing control over the hams. They are also separated in time. Accordingly, the district court erred in exercising ancil-

third party defendant with the defense of a claim by the principal plaintiff.

**3.** 28 U.S.C. § 1367 supersedes this second *Finley* requirement for all suits arising from complaints

filed after December 1, 1990. Pub.L. No. 101–650, § 310(c), 104 Stat. 5089, 5114 (1990). However, Galt filed its complaint in 1989.

lary jurisdiction over the California indemnification claims against Safeway.[4]

We recognize that this result means that Hapag–Lloyd may have to press its claims against Safeway in a second suit in state court. However, this outcome is sometimes unavoidable in a federal system. The limited nature of federal courts' jurisdiction "means that the efficiency and convenience of a consolidated action will sometimes have to be forgone in favor of separate actions in state and federal courts." *Id.* at 555, 109 S.Ct. at 2010.

### Conclusion

■ We reverse the district court's exercise of ancillary jurisdiction over the state law claims against Safeway. The district court may have diversity jurisdiction over Hapag–Lloyd and the other transportation defendants' indemnity claim against Safeway. We remand the case to the district court to consider in its discretion whether to grant Hapag–Lloyd leave to amend its third party complaint to establish such jurisdiction and pursue its third party claim under Rule 14(a). *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 438 (9th Cir.1992). However, even if diversity jurisdiction exists between Galt and Safeway, Rule 14(a) would not allow Hapag–Lloyd to tender Safeway with the defense of Galt's subrogation claim against it. The district court should thus dismiss this claim on remand.

REVERSED and REMANDED.

---

4. Because we decide this case on the basis of the transaction-or-occurrence test, we need not consider the issue presented in *Roco Carriers v. M/V Nurnberg Express*, 899 F.2d 1292 (2d Cir.1990), whether 28 U.S.C. § 1333 authorizes the exercise of jurisdiction over ancillary claims.