**CONRAD ASSOCIATES, Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant.**

**No. C97–20917 EAI.**

United States District Court,
N.D. California,
San Jose Division.

Feb. 10, 1998.

William Green, Jeffrey Brandstetter, Brandstetter & Green, San Francisco, CA.

James P. Wagoner, Robert K. Landen, Alyson A. Berg, McCormick, Barstow, Sheppard, Wayte & Carruth LLP, Fresno, CA.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

INFANTE, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Conrad Associates moves to remand on the grounds that the amount in controversy in this diversity case does not exceed $75,000. Plaintiff also seeks sanctions against Defendant Hartford Accident and Indemnity Company for improperly removing this case. For the reasons set forth below, plaintiff's motion to remand is GRANTED and plaintiff's motion for sanctions is DENIED.

### II. BACKGROUND

On February 1, 1983, Conrad Associates ("Conrad") entered into a contract to design a two-story parking structure located at the

Del Monte Shopping Center in Monterey, California. The parking structure included Unicon pre-cast modules fabricated by Conrad Constructors, a division of Conrad Building Systems. Contained within these concrete units were horizontal cables (tendons) with anchor plates for cables placed against the surface of the Unicon modules. In June 13, 1984, while an insurance policy with Hartford was in effect, a "blow out" occurred in which at least seventeen anchors tore through the upper concrete deck of the parking structure. An action relating to the parking structure was commenced against Conrad and several defendants, alleging negligence in connection with the work performed on the parking structure, and Hartford defended and indemnified Conrad in a settlement of that case under a reservation of rights.

On December 28, 1988, four anchor plates broke through the concrete deck of the shopping center's parking lot, and the owner's insurer filed suit against Conrad Associates, alleging defective construction. Plaintiff tendered its defense to Hartford, which Hartford refused. Plaintiff contributed $16,500 towards the settlement of that case, and spent approximately $40,000 defending the action.

On August 19, 1997, plaintiff filed the instant action for breach of contract and breach of the implied covenant of good faith and fair dealing in the Superior Court for the County of Monterey. The complaint alleges that Conrad incurred $56,500.00 in expenses from Hartford's alleged breach of contract, seeks damages in the form of attorneys' fees and costs incurred in seeking policy benefits from Hartford, and punitive damages. Defendant received notice of the complaint on September 15, 1997, and filed a Notice of Removal based on diversity jurisdiction on October 14, 1997.

### III. LEGAL STANDARDS

The removal statute, 28 U.S.C. § 1441, provides in part, "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.[1] If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c).

In a motion to remand to state court, the party asserting federal jurisdiction has the burden of proof. "The burden of establishing federal jurisdiction is upon the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988) (citations omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (quotation omitted).

In cases in which the existence of diversity jurisdiction depends on the amount in controversy, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997), citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995). If the complaint is silent on the amount of damages claimed, "the court may consider facts in the removed petition and may 'require the parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer*, 116 F.3d at 377. A speculative argument regarding the potential value of the award is insufficient. *Id.* at 376; *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir.1992). The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorneys fees, if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law. See *Rich-*

---

1. The parties do not dispute diversity.

mond v. Allstate Ins. Co., 897 F.Supp. 447 (S.D.Cal.1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 (N.D.Cal.1997).

## IV. DISCUSSION

Plaintiff asserts that Hartford cannot meet its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum of $75,000. Defendant contends that the amount in controversy, which includes contract damages in the amount of $56,500, plus attorneys fees, plus punitive damages, exceeds $75,000.

Defendant advances three arguments in support of its contention that plaintiff's claim is worth more than $75,000. First, defendant contends that Conrad's refusal to stipulate to damages less than $75,000 "conclusively" establishes that plaintiff deems the amount in controversy to be in excess of $75,000. Second, defendant asserts that plaintiff's request for attorneys' fees incurred in seeking to enforce insurance benefits is likely to reach at least $20,000 by the conclusion of this litigation since the parties have agreed to have the issue of Hartford's duty to defend addressed in a motion for summary judgment. Third, defendant asserts that a punitive damage award would likely exceed the jurisdictional amount since the average punitive damage award in a bad faith claim for the past year in the State of California was $6,720,222.23.

### A. Plaintiff's Refusal to Stipulate to Lessor Damages

Defendant's assertion that it is "conclusively established" that the amount in controversy in this case exceeds $75,000 by plaintiff's refusal to stipulate that the case is not worth $75,000 is not convincing. First, defendant cites no cases permitting such a conclusion from a failure to so stipulate. Two cases in this district have expressly declined to find that a refusal to stipulate to damages below the jurisdictional amount is even persuasive in evaluating the worth of

the claims in a complaint. See *Valle v. State Farm Mutual Automobile Ins.*, 1997 WL 564047 (N.D.Cal.1997) and *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 (N.D.Cal.1997). Moreover, since a defect in subject matter jurisdiction cannot be stipulated to or waived, attempting to force the plaintiff to enter a stipulation regarding the potential amount of damages would serve no effect in determining the actual amount in controversy at the time of removal. See, e.g., *Angus v. Shiley, Inc.*, 989 F.2d 142 (3rd Cir.1993).[2]

### B. Attorneys' Fees

California law permits recovery of attorneys fees incurred by the insured in obtaining the benefits due under the policy when the insurer's conduct in withholding benefits was tortious. *Brandt v. Superior Court*, 37 Cal.3d 813, 816–819, 693 P.2d 796, 210 Cal.Rptr. 211 (1985). The theory permitting this recovery is that "[w]hen an insurer's tortious conduct reasonably compels the insured to, retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense." *Id.* However, only attorney fees attributed to an attorney's efforts in obtaining benefits due under. the insurance contract are recoverable, and "[f]ees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable." *Id.* Since the amount in controversy may include attorneys fees if recoverable by statute or contract, attorney fees recoverable under *Brandt* may be considered in determining whether the amount in controversy exceeds the jurisdictional floor. *Richmond*, 897 F.Supp. at 450; *Miller*, 1997 WL 136242, *4.

Defendant states that it sought documentation from plaintiff of its attorney fees expended in this litigation thus far, but plaintiff has failed to provide documentation to date despite its promises to do so. Defendant

---

**2.** Some cases have remanded an action to state court after the plaintiff *voluntarily* stipulated that he would not seek damages above the jurisdictional amount, or have refused to remand after the plaintiff freely conceded that damages would exceed $75,000. However, as noted in *Valle, supra.*, it would be unfair to give defendants a strategic advantage by being able to *force* plaintiffs to make a choice between stipulating against their future remedies and remaining in federal court. Moreover, plaintiff's offer to settle the action for $74,000 equally suggests that plaintiff values its claim as below the jurisdictional minimum.

asserts that plaintiff's failure to provide billing statements precludes the determination that the amount in controversy is not satisfied.[3] Alternatively, defendant provides its estimate of recoverable attorneys fees as exceeding $20,000. In support of this contention, defendant points out that Conrad has confirmed that it has expended at least $4000 in attorney fees thus far. Based upon the parties' agreement that the issue of Hartford's duty to defend should be addressed by a motion for summary judgment, and that plaintiff's counsel charges fees of $200 per hour (see plaintiff's request for sanctions), defendant contends that "Conrad will necessarily spend at least eighty hours in prosecuting the coverage phase of this action and incur at least an additional $16,000.00 in fees." Wagoner Decl. ¶ 4. Based upon the $56,500 claimed damages for breach of contract, plus a minimum of $20,000 in attorneys fees, Mr. Wagoner concludes that the total amount of damages incurred in this litigation will probably exceed $76,500.

Plaintiff confirms in its unsworn reply that total attorney fees to date have totaled $6000. Plaintiff asserts, however, that defendant has not attempted to demonstrate which percentage of these fees were incurred to recover contract damages (recoverable under *Brandt* ) and which percentage of these fees were expended to seek extra-contractual damages (not recoverable under *Brandt* ).

■■■ Defendant's contention that attorney fees are likely to total at least $20,000 is too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence. First, defendant simply asserts that it will take eighty hours to bring this case to the summary judgment stage without providing any factual information of how it arrived at this figure. Although defendant sets forth the tasks plaintiff's counsel will have to take in opposing a motion for summary judgment, it does not estimate the amount of time each major task will take in arriving at its eighty hour figure. Second, it is speculative to say that every hour expended in this litigation will be billed by Mr. Green at $200 per hour. Third, since only those attorney fees incurred in seeking policy benefits are recoverable under *Brandt,* it is unclear what amount of this estimated sum would likely be recovered as *Brandt* fees. Finally, the amount in controversy must be determined as of the date of removal. *Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993); *United Farm Bureau Mut. Ins.Co., Inc. v. Human Relations Comm'n,* 24 F.3d 1008, 1014 (7th Cir.1994). In estimating the potential attorney fees in this case, defendant is relying upon post-removal events, i.e., the $6,000 spent thus far by plaintiff on attorney fees and the parties' January 13, 1998, conference call in which both parties agreed that the issue of Hartford's duty to defend would be addressed in a motion for summary judgment.

Therefore, the evidence introduced by defendant does not establish that it is more likely than not that *Brandt* attorney fees are likely to add $18,500 to the $56,500 contractual damages identified in the complaint as of the date the complaint was removed to federal court.

### C. Punitive Damages

■■■■■ Defendant correctly points out that California law permits recovery of punitive damages for insurance bad faith claims and that such damages may be included in calculating the jurisdictional amount. *Richmond v. Allstate Ins. Co.,* 897 F.Supp. 447, 449 (S.D.Cal.1995). Defendant also attaches jury verdicts awarding punitive damages in Monterey County and California, and asserts that punitive damages in insurance bad faith cases have averaged $4,050,000 and $6,720,222.23, respectively.[4]

---

**3.** While plaintiff's failure to provide promised documentation of attorney's fees after it promised to do so appears to be unreasonable, defendant cites no case permitting a court to invoke jurisdiction as an evidentiary sanction.

**4.** Defendant's reliance upon *Davenport v. Mutual Benefit Health & Accident Ass'n,* 325 F.2d 785, (9th Cir.1963), for the contention that it need only demonstrate that punitive damages are available as a matter of law and that the complaint alleges that the injury was done maliciously so as to support punitive damages to support its burden of showing the amount in controversy exceeds $75,000 is misplaced. *Davenport* involved a complaint that was initially filed in federal court by the plaintiff, and it is well established that a different standard applies to such cases in determining whether jurisdiction is appropriate. *Sanchez, supra.*

Plaintiff attacks Hartford's submission of jury verdicts as insufficient since defendant does not attempt to show that the jury verdicts, which involve a wide range of insurance policies and facts, are analogous to the facts of this case.

Assuming that defendant's submission of bad faith jury verdicts is probative on the potential recovery of punitive damages in this case, defendant has made no effort to compare the facts of those cases with the alleged facts of this case. In fact, as set forth in the jury verdict summaries, the cases cited by defendant bear little or no resemblance to this litigation. Many of the jury verdict summaries submitted by defendant involve disability insurance claims, private homeowner insurance policies, or commercial policies with emotional distress claims and/or loss of homes and businesses. The few commercial insurance policy cases involve economic and compensatory damages in the sum of hundreds of thousands of dollars. See, e.g., *Fillippo Industries, Inc. v. WM. H. McGee & Co.* (plaintiff claimed $624,000 due under insurance policy, plus loss of business and punitive damages); *Vann v. The Travelers Co.* (plaintiff claimed $1,460,000 in compensatory damages and damages for loss of business and emotional distress compounded by the fact that plaintiff's wife suffered from Alzheimer's Syndrome); *Lifetime Memory Products, Inc. v. Century Indemnity Ins. Co. of North America* (parties stipulated to $150,000 in compensatory damages); *Partnership Placements, Inc., et al. v. Landmark Ins. Co.* ($460,000 breach of contract damages). Only two of the cases submitted by defendant even involve an insurer's duty to defend.

The instant case does not appear to contain the egregious circumstances involved in the cases submitted by defendant. Moreover, the compensatory damages sought by plaintiff are well below the damages sought in any of the cases submitted by defendant. Defendant's citation of these cases, by itself, is not sufficient to meet its burden under *Sanchez*. As stated by the district court in *Haisch v. Allstate Insurance Co.*, 942 F.Supp. 1245, 1248 (D.Ariz.1996) (and quoted in *Miller, supra.*):

[i]t would be inherently speculative for this Court to conclude that the amount in controversy requirement can be met by simply asserting that large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud. As Plaintiff points out, Defendant has failed to articulate why the *particular facts* that are alleged in the instant case might warrant extraordinary damages. (emphasis added.)

The court has not been presented with any *facts* that would support an award of punitive damages in this case. Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim *could* total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages. See also, *Terry v. Service America Corp.*, 1997 WL 786774, *1 (N.D.Miss.1997) (defendant's contention that plaintiff's claim for punitive damages could total a large amount insufficient to satisfy its burden on plaintiff's motion to remand where defendant offered no evidence of its wealth or any other factor relevant to a punitive damage award); and *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir.), cert. denied, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995) ("the preponderance burden forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is plead").

Therefore, the evidence submitted in this action provides no reliable basis for the court to determine that it is more likely than not that a potential punitive damage award could sufficiently increase the amount in controversy to meet the jurisdictional requirement.

Given "[t]he strong presumption against removal jurisdiction" and in favor of remand,[5] the court holds that defendant has not shown, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum of more than $75,000. The court therefore lacks diversity jurisdiction to hear this case.

---

5. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992).

## V. ORDER

For the foregoing reasons, plaintiff's motion to remand is GRANTED. IT IS FURTHER ORDERED that plaintiff's request for costs and attorney fees as sanctions is DENIED.

IT IS SO ORDERED.