**Melissa SURBER, Plaintiff,**

v.

**RELIANCE NATIONAL INDEMNITY CO., Defendant.**

**No. C 00–01380 CRB.**

United States District Court, N.D. California.

July 31, 2000.

Joseph Scanlan, Jr., Miller, Morton, Caillat & Nevis, San Jose, CA, for Plaintiff.

Eileen Wright, Scadden, Hamilton & Ryan, San Francisco, CA, for Defendant.

## MEMORANDUM AND ORDER

BREYER, District Judge.

On July 10, 2000, this Court issued an Order to Show Cause why this matter should not be remanded for lack of subject matter jurisdiction. Both plaintiff and defendant responded to the Court's order, and the Court heard oral argument on the matter on January 28, 2000. For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction over this matter, and that it must therefore remand the case to California Superior Court.

## BACKGROUND

In November 1998, plaintiff Melissa Surber purchased a 1994 Hyundai Excel for $3,800. On November 19, 1998, plaintiff purchased an automobile insurance policy from Reliance for a premium of $1,856. That insurance policy is the subject of this litigation.

On September 20, 1999, plaintiff was involved in an automobile accident which damaged her car. She presented a claim to Reliance and submitted the car to Reliance's agents for a repair estimate and appraisal. Following the appraisal, Reliance concluded that the Hyundai was a "total loss" because the cost of repair would exceed the value of the car. Specifically, Reliance's appraiser prepared a report explaining that the pre-accident damage to the car's exterior would cost $2121.40 to repair and that the damage caused by the accident would cost $3,121.12 to repair. Because the total value of the car fell between $4,100.00 and $2,630.00, the report recommended that the car should not be repaired at all. In light of this report, Reliance's claims adjuster contacted plaintiff and informed her that Reliance did not plan to approve her claim. After plaintiff expressed her dissatisfaction with this resolution, Reliance offered her $500 to settle the claim. When plaintiff refused Reliance's offer, Reliance demanded that she submit to a secondary appraisal process mandated under the insurance contract. Because she could not afford the cost of the contractual appraisal process, plaintiff refused to participate.

Instead, plaintiff filed the instant action on February 3, 2000 in Alameda County Superior Court. Plaintiff's complaint alleges three causes of action: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of California Business and Professions Code § 17200, *et seq.* Reliance removed the action to this Court on April 21, 2000, invoking federal diversity jurisdiction.

## DISCUSSION

This Court may assert subject matter jurisdiction over a case when the amount in controversy exceeds $75,000 and the parties are citizens of different states.

*See* 28 U.S.C. § 1332. There is a strong presumption against the exercise of removal jurisdiction. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). As the removing party invoking the Court's diversity jurisdiction, defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996). If it is unclear from the complaint what amount of damages plaintiff seeks, "the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus,* 980 F.2d at 566. The Court may raise the issue of subject matter jurisdiction *sua sponte. See Galt G/S v. Hapag–Lloyd AG,* 60 F.3d 1370, 1373 (9th Cir.1995). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus,* 980 F.2d at 566.

In this case, plaintiff's complaint was initially filed in state court and alleges only state law claims. The complaint states that the total damages "exceed[ ] $10,000." In its Notice of Removal, defendant contends that this Court has subject matter jurisdiction over the action because the plaintiff is a citizen of California and the defendant is not a citizen of California. Defendant also contends that the amount in controversy exceeds $75,000.00.

Defendant's Notice of Removal fails to allege facts that sufficiently demonstrate the requisite jurisdictional amount in this case. However, in its response to the Court's July 10 order, defendant raises a number of arguments to support its assertion that the amount-in-controversy requirement is met. As explained below, each of these arguments fails.

### A. Plaintiff's Statement of Damages

■ Defendant first argues that the amount in controversy exceeds $75,000 because plaintiff served Reliance with a "statement of damages" on March 31, 2000, claiming that plaintiff was seeking general damages of $210,040 and punitive damages of $1,000,000. Relying on that statement, defendant argues that the amount in controversy clearly exceeds the jurisdictional minimum.

■ Although plaintiff's "statement of damages" is not part of the complaint or the state court file, it does carry more weight than a typical settlement demand or an informal correspondence between the parties. Pursuant to California Code of Civil Procedure sections 425.10 and 425.11, a plaintiff in a personal injury or wrongful death action may not include a specific damages prayer in her complaint, but, upon request by the defendant, she must provide a detailed statement of damages within 15 days. CAL. CIV. PROC. CODE §§ 425.10, 425.11. The purpose of section 425.11 is to give the defendant specific notice of damages sought by the plaintiff in a document that is separate from both the complaint and existing informal mechanisms such as settlement conference statements. *See Debbie S. v. Ray,* 16 Cal. App.4th 193, 198, 19 Cal.Rptr.2d 814 (1993). Accordingly, although a statement of damages pursuant to section 425.11 is not filed with the court as part of the complaint, it is normally viewed as a serious estimate of the damages in a given case.

In this case, plaintiff's complaint alleges only that the total amount of damages "exceeds $10,000." Plaintiff's statement of damages alleges damages with far more specificity: $200,000 in pain, suffering and inconvenience, $5,200 in lost earnings, $4,740 in property damage, and $100 in transportation expenses, in addition to $1,000,000 in punitive damages.

The Court does not find the allegations in plaintiff's statement of damages to be conclusive for two reasons. First, as noted above, section 425.11 by its terms applies only in cases involving personal injury or wrongful death. Plaintiff's complaint in this case states neither a personal injury nor a wrongful death claim. Therefore,

the use of the section 425.11 statement of damages is not appropriate in this case. Whatever weight such a statement might have in a typical personal injury action, it deserves less credence in an insurance case such as this one in which the statement was neither required nor binding.

Second, and more importantly, while plaintiff's estimates far exceed the minimum for diversity jurisdiction, the Court finds no support for them in either plaintiff's complaint or defendant's Notice of Removal. "Although the court normally defers to the statement of damages presented in the complaint, the court also has an 'independent obligation' to examine its jurisdiction where doubts arise." *Marchionna v. Ford Motor Company*, 1995 WL 549124 (N.D.Ill. Sept. 8, 1995).

At bottom, plaintiff's complaint seeks to remedy defendant's refusal to repair or replace her Hyundai. Plaintiff purchased the car for $3,800. Shortly after plaintiff's accident, Reliance estimated the value of the car to be between $4,100 and $2,630. Plaintiff's complaint alleges that the car's value at the time of the accident was $4,530. In other words, plaintiff's underlying damage claim does not appear to be any greater than $5,000.

The leap from this $5,000 in property damage to plaintiff's statement that she suffered $210,040 in total damage is difficult to credit. Defendant provides no evidence that plaintiff suffered any particular emotional injury or that she ever sought treatment for her alleged distress. Indeed, neither plaintiff nor defendant even indicate whether the $200,000 figure is based on plaintiff's pain, emotional distress, inconvenience, or some combination of the three. In short, defendant points to no facts in this case to indicate that a damages award anywhere near $75,000—much less $210,000—is likely. "While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying

injury." *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1052 (5th Cir.1982). *See also Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529 (9th Cir.1980) (affirming dismissal on ground that injury was to small to establish requisite amount of damages); *Anthony v. Security Pac. Fin. Serv. Inc.*, 75 F.3d 311, 318 (7th Cir. 1996). In this case, the Court cannot accept plaintiff's statement of damages as a conclusive indication of subject matter jurisdiction.

The Court is aware of only one published case in which a plaintiff's "statement of damages" was accepted by the court as proof that the amount in controversy requirement had been met. *See Rahwar v. Nootz*, 863 F.Supp. 191 (D.N.J.1994). In *Rahwar*, the New Jersey district court concluded that a statement of damages similar to the one in this case was sufficient to establish the minimum amount in controversy. However, the *Rahwar* opinion did not mandate as a general rule that a statement of damages is *binding* for the purposes of determining subject matter jurisdiction. Rather, the *Rahwar* court held only that it *could consider* the plaintiff's statement of damages as a part of the state court record. *Id.* at 192. To the extent that *Rahwar* is persuasive, it is so only for that narrow proposition. Nothing in *Rahwar* indicates that the Court must necessarily accept a plaintiff's statement of damages at face value if that statement does not find support in the complaint or the record.

In this case, the only damage claim concretely supported by the complaint is a claim for approximately $5,000 in property damage. While plaintiff *might* have suffered $210,000 in damages as a result of defendant's failure to reimburse her, the record currently before the Court does not support that conclusion. No case, including *Rahwar*, compels the Court to accept plaintiff's estimate of damages in such a circumstance. Because defendant has failed to meet its burden of persuasion, the Court rejects its contention that the

amount in controversy requirement has been satisfied.

### B. Attorney's Fees

In addition to compensatory damages, plaintiff's complaint requests an award of attorney's fees, and defendant urges the Court to consider this potential recovery in determining the amount in controversy. "When an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). In breach of good faith actions like this one, California law permits the plaintiff to recover attorney's fees at the discretion of the Court. *See Brandt v. Superior Court*, 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985). Therefore, the Court must consider attorney's fees as an element of the amount in controversy in this case.

However, defendant has not provided any evidence whatsoever to establish the approximate cost of plaintiff's attorney's fees in this case. Defendant has not estimated the amount of time that the case will require, nor has it revealed plaintiff's counsel's hourly billing rate. Rather than proffer any evidence on this issue, defendant's brief summarily states that plaintiff's *Brandt* fees "may well, in and of themselves, exceed the jurisdictional minimum." This bald statement, unsupported by any evidence, does not suffice to create subject matter jurisdiction.

### C. Punitive Damages

In calculating the amount in controversy, the Court must also consider punitive damages that plaintiff can recover as a matter of law. *See Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D.Cal.1995). In this case, the facts alleged in the complaint suggest the possibility of a punitive damages award. *See Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980 (1978) (punitive damages permitted in California bad faith action against insurer).

Once again, however, defendant proffers absolutely no evidence of potential punitive damages other than plaintiff's March 2000 "statement of damages." Nor does anything in the record indicate that plaintiff's $1,000,000 estimate is anything but a bold and optimistic prediction.

In order to establish probable punitive damages, a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts. *See Faulkner v. Astro-Med, Inc.*, 1999 WL 820198 at *4 (N.D.Cal.); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 (N.D.Cal.). Defendant has submitted no such evidence in this case. In the absence of any evidence regarding punitive damages, the Court concludes that defendant has failed to meet its burden in this case.

### D. Administrative Cost of Compliance with a Potential Court Order

Finally, defendant argues that, even if plaintiff's individual damages do not amount to $75,000, the potential cost of complying with an injunction under Business and Professions Code section 17200 will surely exceed the jurisdictional minimum. Defendant asserts that it may be required to spend thousands of dollars in administrative costs merely to determine whether any other Reliance policy-holders are "similarly situated" to plaintiff. These administrative costs, defendant argues, may propel the total amount in controversy beyond $75,000.

Defendant's argument fails for two reasons. First, it is not at all clear that the Court should consider defendant's costs when determining the amount in controversy. As a general matter, defendant's argument is correct: in determining jurisdiction, the Court may consider the cost to the defendant of complying with an injunction. *See* Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Fed. Civ.*

*Pro. Before Trial* ¶ 2:483 (The Rutter Group 2000). However, in class suits under Rule 23, this general rule does not apply. Rather, in class actions, each class member must individually satisfy the amount in controversy requirement as long as the claims of individual class members seek to enforce "separate and distinct" rights. *Snyder v. Harris,* 394 U.S. 332, 335–36, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In the context of equitable relief, the Ninth Circuit has held that, "where the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to the equitable as well as the monetary relief." *Snow v. Ford Motor Co.,* 561 F.2d 787, 789 (9th Cir.1977). In other words, in class suits, courts should not consider the cost to defendant of complying with a potential injunction.

Defendant argues that this case represents an exception to these accepted principles because plaintiff's section 17200 cause of action is not a class claim. Therefore, according to defendant, the Court can consider the cost of administrative compliance in determining the amount in controversy. The Court is aware of two district court cases in this Circuit which support defendant's argument. In *Mangini v. R.J. Reynolds Tobacco Co.,* 793 F.Supp. 925 (N.D.Cal.1992), the court held that, because a section 17200 claim is not officially a class action under Rule 23, the holding of the *Snow* court did not apply. Rather, in *Mangini,* the district court considered the detrimental value of the suit to the defendant in determining the jurisdictional amount at issue. In *Myers v. Merrill Lynch & Co., Inc.,* 1999 WL 696082 (N.D.Cal.), the district court relied on *Mangini* in holding that the value of injunctive relief should be viewed from the defendants' perspective in a section 17200 action.

The Court finds neither *Mangini* or *Myers* convincing on this point. Adopting the reasoning of those cases would essen-

tially create federal jurisdiction over any section 17200 claim between diverse parties, no matter how small the injury to the representative plaintiff. Such a result is untenable. Section 17200 is not a federal cause of action.

Instead, the Court adopts the reasoning of another district court case from this Circuit. *See Phipps v. Praxair, Inc.,* 1999 WL 1095331 (S.D.Cal.). The *Phipps* court rejected *Mangini,* noting that the attempted distinction between class actions and section 17200 representative actions was essentially a distinction without a difference. The rule prohibiting plaintiffs from aggregating their claims need not apply only to class actions brought under Rule 23. *Phipps,* 1999 WL 1095331 at *5. Indeed, the prohibition on aggregation applies in non-class multiple-plaintiff cases as well. *Id.; see also Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709, 714 (C.D.Cal.1995) (citing *Snyder,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319) ("[T]he doctrine of aggregation of claims [is] not and [has] never been based on the categories of Rule 23.... Rather, the doctrine is in fact based on the Supreme Court's interpretation of 'matter in controversy,' within the meaning of the diversity statute."). Like class actions, claims under section 17200 seek relief on behalf of numerous individuals. Accordingly, in determining jurisdiction over section 17200 claims, courts should not consider the potential costs to the defendant of compliance with a potential injunction. *See also Arnold v. General Motors Corp.,* 1998 WL 827726 (N.D.Cal.); *Morison v. Rand McNally & Co.,* 1997 WL 564028 (N.D.Cal. Sept. 4, 1997).

Applying this reasoning, the Court is convinced that the rule explained in *Snow* should be applied in plaintiff's case. In the context of defendant's argument, this outcome makes a great deal of sense. In its response the Court's July 10 Order to Show Cause, defendant urges the Court to consider the administrative costs of paying awards to *individual policyholders* in the

aftermath of an adverse judgment. These costs clearly arise from the *separate claims* of individual policyholders rather than any aggregated claim on behalf of a unified group. Because these costs address the distinct claims of numerous injured individuals, they will not be considered by the Court in determining the amount in controversy.

The Court's second reason for rejecting defendant's "administrative costs" argument is much more basic. Even if the Court were to consider the cost to defendant of complying with an injunction, that extra cost would not raise the total amount in controversy to the jurisdictional level. According to the declaration of Trinh Hinson, submitted by defendant in support of its response to the Court's July 10 order, the total administrative cost of compliance with an injunction in this case may total approximately $20,000. Even if the Court accepts this figure as a component of the amount in controversy in this case, defendant has still failed to meet its burden of establishing that $75,000 is at issue. For these reasons, the Court rejects defendant's "administrative costs" argument.

## CONCLUSION

Defendant has failed to meet its burden of establishing that the amount in controversy in this case exceeds $75,000. In the Court's view, this is a $5,000 case. Neither plaintiff's bold and unsupported demand nor plaintiff's section 17200 allegation can change this basic fact. Therefore, the Court hereby REMANDS the case to the Superior Court of Alameda County. Each party shall bear its own fees and costs in connection with this removal.

**IT IS SO ORDERED.**