**Dennis Ray BURK; Betty Burk, Plaintiffs,**

v.

**MEDICAL SAVINGS INSURANCE COMPANY, Defendant.**

**No. CV 04–1802–PHX–NVW.**

United States District Court, D. Arizona.

Dec. 8, 2004.

* Editor's Note: Exhibit A is not included in this publication.

 

Michael John Raymond, Esq., Randy L. Sassaman, Esq., Raymond Greer & Sassaman PC, Phoenix, AZ, for Plaintiffs.

Donald L. Myles, Jr., Esq., Jones Skelton & Hochuli PLC, Larry R. Jackson, Jackson Law Firm LLC, Fishers, IN, for Defendant.

## ORDER

WAKE, District Judge.

The Court has reviewed Defendant Medical Savings Insurance Company's ("MSIC") Supplemental Brief in Support of Federal Diversity Jurisdiction Based on Amount in Controversy in Excess of $75,000 Under .28 U.S.C. § 1332. (doc. # 11.) Defendant submitted that brief in response to the Court's Order of November 12, 2004, requiring Defendant to either acknowledge that it does not contend that it is more likely than not that Plaintiffs will recover more than $75,000 if they prevail on their claims or submit admissible evidence that Plaintiffs' damages meet the jurisdictional amount for this Court's jurisdiction under 28 U.S.C. § 1332. (doc. # 9.) The Court now concludes that it does not have subject matter jurisdiction over this action and therefore must remand the case to state court.

### I. Background

Plaintiffs Dennis Ray Burk and Betty Burk ("the Burks") purchased a health insurance policy from MSIC which became effective on June 1, 1999. The insurance policy provides, in relevant part, that MSIC "will pay the coinsurance percentage in excess of the deductible amount for services and supplies that qualify as covered expenses." (doc. # 4, ex. 1, § 6.) The policy also contains a general exclusion of charges in excess of the reasonable and customary charge. (doc. # 4, ex. 1, § 7.)

On April 26, 2002, Dennis Burk underwent an out-patient procedure including a post-cardiac heart catheterization at Scottsdale Healthcare Shea. The hospital billed MSIC $10,075.95 for the procedure. MSIC determined that the reasonable and customary charges for those services totaled only $3,054.81 and submitted a payment to the hospital for what it termed the

reasonable value of the services. The hospital rejected the payment.

On December 16, 2002, Betty Burk was admitted to Desert Samaritan Medical Center ("Desert Samaritan") for a surgical procedure to her colon. Desert Samaritan billed MSIC $10,564.35 for the procedure. On January 17, 2003, MSIC issued an "explanation of benefits" stating that the reasonable and customary charges for Betty Burk's surgical procedure totaled only $3,438.76. MSIC submitted a payment in that amount to Desert Samaritan but the check was returned.

MSIC and the two hospitals continue to dispute the charges owed for the Burks' medical treatments. In the interim, the Burks have received bills from the hospitals requesting payment on the disputed charges. MSIC contends that it "made [ ] clear at all times that they would defend and indemnify the Burks in any proceeding instituted by any of the medical care providers wherein MSIC made a determination that the charges were deemed to be above what was reasonable and customary." (doc. # 4 at 3.) The Burks dispute the level of support MSIC offered in the event of proceedings brought by the hospitals against them, arguing "MSIC vaguely and ambiguously stated that it would 'provide reasonable assistance to [them]' in that event." (doc. # 7 at 2.)

Plaintiffs filed a complaint against MSIC in Maricopa County Superior Court on May 27, 2004, alleging breach of contract, breach of covenant of good faith and fair dealing, and a violation of the Arizona Consumer Fraud Act, A.R.S. § 44–1521–1534. MSIC removed the case to this Court on August 27, 2004. Its Petition for Removal stated "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest or costs."

On September 27, 2004, MSIC filed a Motion to Compel Arbitration and to Stay Litigation. On November 12, 2004, the Court issued an Order in which it explained that it could not rule on MSIC's motions at that time because it was not yet satisfied that MSIC had discharged its burden to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. The Court noted that the amount in controversy was not evident from the face of the Complaint and MSIC had not presented any facts in the removal petition relevant to the amount in controversy other than an insufficient conclusory allegation. Accordingly, the Court ordered MSIC to support its contention that the amount in controversy exceeds $75,000 with evidence in the form of affidavits or otherwise. On November 22, 2004, MSIC filed a Motion to Join Indispensable Parties. As is the case with MSIC's previous motions, the Court cannot rule on this motion unless it has subject matter jurisdiction. MSIC filed its supplemental brief regarding subject matter jurisdiction on November 24, 2004.

## II. Legal Standards

■ Federal courts may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiff. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal subject matter jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988). There is a strong presumption against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c).

■ District courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C.

§ 1332. In the removal context, the inquiry into the amount in controversy is not confined to the face of the complaint. *See Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir.2004). The Court may also consider facts presented in the removal petition and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* If the amount in controversy is not facially evident from the complaint, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir.2003); *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996).

### III. Discussion

 MSIC continues to assert that the amount in controversy exceeds $75,000. It should be noted that its effort to prove this assertion is somewhat complicated by the Arizona state court procedural rules, which prohibit plaintiffs from pleading specific amounts for unliquidated damages. Ariz. R. Civ. P. 8(g). Other states have similar rules. *See, e.g.,* Cal.Civ.Proc.Code § 425.10(b) (prohibiting plaintiffs in a personal injury or wrongful death action from stating the amount of damages demanded); Nev. R. Civ. P. 8(a) ("Where a claimant seeks damages of more than $10,000, the demand shall be for damages 'in excess of $10,000' without further specification of the amount."). One effect of these state court rules is to make it more difficult for federal courts to determine whether they have jurisdiction over actions removed from state court on the basis of diversity. *See* Alice M. Noble–Allgire, *Removal of Diversity Actions When the Amount in Controversy Cannot be Determined from the Face of Plaintiff's Complaint: The Need for Judicial and Statutory Reform to Preserve Defendant's Equal Access to Federal Courts,* 62 Mo. L.Rev. 681 (1997). However-

er, the Ninth Circuit has emphasized that such rules do not "present an insurmountable obstacle to quantify the amount at stake when intangible harm is alleged; the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Valdez,* 372 F.3d at 1117. Thus, even where there is tension between the state court pleading rules and the traditional federal removal framework, the defendant must present facts to show that the amount in controversy exceeds the jurisdictional threshold. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir.1997); *McCaa v. Mass. Mut. Life Ins. Co.,* 330 F.Supp.2d 1143, 1150 (D.Nev. 2004)

MSIC asserts that "the compensable damages in controversy are approximately $20,640.30 in hospital bills plus any compensable damages for policy premiums under the Consumer Fraud Act claim." (doc. # 11 at 5.) MSIC also notes that the Burks seek to recover for "monetary loss or damage to their credit reputation, as well as emotional distress, humiliation, inconvenience, anxiety and worry." MSIC does not estimate Plaintiffs' likely recovery for these alleged losses. Nor does it suggest that their cumulative value, when added to the $20,640.30 in hospital bills, raises the amount in controversy above $75,000. Therefore, the Court will not consider the policy premiums, credit damages, or emotional distress damages in determining whether the amount in controversy requirement has been satisfied. *See Miller v. Michigan Millers Ins. Co.,* 1997 WL 136242 at *5 (N.D.Cal. Mar.12, 1997) ("[I]n the absence of papers suggesting this claim will yield an adequate amount in controversy, the court will not speculate as to the damages potentially embodied in plaintiffs' vague request for emotional distress [damages].."); *see also Wilson v. Union Security Life Ins. Co.,* 250 F.Supp.2d 1260, 1265 (D.Idaho 2003) ("[W]here . . .

the Defendant relies on the damages that might flow from the Plaintiff's causes of action, it must provide evidence that would permit a reasoned calculation of those damages."). MSIC's assertion of federal subject matter jurisdiction rests on its argument that Plaintiffs' claims are worth more than $75,000 based on recoverable attorneys' fees and punitive damages. MSIC also requests that the Court require the Burks to stipulate that their damages are less than $75,000 if it concludes that the amount in controversy requirement has not been met.

### A. Attorneys' Fees

 Attorneys' fees may be included in computing the amount in controversy "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.1998). Arizona law authorizes a discretionary award of attorneys' fees in contract actions. A.R.S. § 12–341.01(A). Attorneys' fees incurred in obtaining the benefits of an insurance contract are recoverable in a bad faith action but the recoverable fees include only those incurred to obtain the contract benefits and not fees incurred in seeking tort damages. *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz. 33, 35–36, 800 P.2d 20, 22–23 (Ariz.Ct.App.1990).

 Defendant contends that attorneys' fees in this action are likely to exceed $75,000 and approach $125,000. It supports this contention with an affidavit from defense counsel estimating that his own fees for defending the case will fall in that range and speculating that the costs incurred by Plaintiffs will be similar. Additionally, defense counsel's affidavit lists a series of tasks that he anticipates Plaintiffs' counsel will undertake in litigating the case through discovery. However, there is no evidence of the estimated time

these tasks will consume nor the billing rate charged by Plaintiffs' attorneys.

MSIC's assertion that attorneys' fees are likely to exceed $75,000 in this matter is highly speculative and therefore does not further its effort to prove the amount in controversy by a preponderance of the evidence. *Sanchez*, 102 F.3d at 405. First, the Court is not persuaded that MSIC's estimate of its own fees has much relevance in assessing the Burks' likely fees. Second, even if Plaintiffs' counsel in fact pursues all of the tasks defense counsel anticipates, it is nonetheless impossible to calculate the fees those activities will generate with no evidence of the time they will consume or the rate at which they will be billed. *See Surber v. Reliance Nat. Indem. Co.*, 110 F.Supp.2d 1227, 1232 (N.D.Cal.2000). Third, even if the Burks were to incur $75,000 in attorneys' fees, it is unclear what portion of those fees would be recoverable as fees incurred to obtain contract benefits under *Schwartz*. Cf. *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F.Supp. 1196, 1200 (N.D.Cal.1998) ("[S]ince only those attorney fees incurred in seeking policy benefits are recoverable under [California law], it is unclear what amount of [the] estimated sum would likely be recovered."). Finally, the Court notes that district courts in this circuit have disagreed whether attorneys' fees incurred after the date of removal are properly included in the amount in controversy. *Compare Faulkner v. Astro–Med, Inc.*, 1999 WL 820198 at *4 (N.D.Cal. Oct.4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal."); *Conrad*, 994 F.Supp. at 1200 (declining to consider attorney's fees spent after the date of removal) *with Brady v. Mercedes–Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010–11 (N.D.Cal.2002) (including "a reasonable estimate of attorneys fees like-

ly to be expended" in calculating the amount in controversy); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034–35 (N.D.Cal.2002) (same). Thus, Defendant's estimate of Plaintiffs' fees for activities anticipated but not yet performed, even if accurate, may be irrelevant. Moreover, even assuming that the correct approach is to include a reasonable estimate of fees likely to be recovered, MSIC has not presented evidence sufficient to establish that it is more likely than not that Plaintiffs' attorneys' fees incurred in pursuing contract benefits will increase the amount in controversy above $75,000.

### B. Punitive Damages

■ Punitive damages may also be included in determining the amount in controversy if they are recoverable under the applicable law. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D.Cal.1995). Arizona law authorizes an award of punitive damages in bad faith insurance cases, *Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 598, 734 P.2d 76, 83 (1987), and for claims under the Arizona Consumer Fraud Act, *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342–43, 666 P.2d 83, 87–88 (Ariz.Ct.App.1983). However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met. *See Surber*, 110 F.Supp.2d at 1232. Defendant must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000. *See McCaa*, 330 F.Supp.2d at 1149. Removing defendants have established probable punitive damages, for example, by introducing evidence of jury verdicts in analogous cases. *See Simmons*, 209 F.Supp.2d at 1033; *see also Ansley v. Metropolitan Life*

*Ins. Co.*, 215 F.R.D. 575, 578 (D.Ariz.2003) (finding that the removing defendant established the amount in controversy requirement where the notice of removal cited similar cases in which the plaintiff was awarded at least $500,000 in punitive damages).

■ MSIC provides no evidence of the likely punitive damages in this case but states in its brief, "there is not a single reported Arizona case decided in the last 15 years in which punitive damages did not exceed $75,000." (doc. # 11 at 5.) MSIC does not support this statement with even a single citation to a relevant case where punitive damages in excess of $75,000 were awarded. Thus, there is no basis to conclude that the Burks are likely to receive such an award. In *Conrad*, the court found actual evidence of jury verdicts awarding punitive damages in insurance bad faith cases in excess of the jurisdictional amount insufficient to sustain federal jurisdiction because the defendant failed to compare the facts of those cases with the alleged facts of its case. *Conrad*, 994 F.Supp. at 1201. The court also noted

> Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim *could* total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages.

*Id.* Similarly, in *Haisch v. Allstate Ins. Co.*, 942 F.Supp. 1245 (D.Ariz.1996), the court stated

> It would be inherently speculative for this Court to conclude that the amount in controversy requirement can be met by simply asserting that large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud ... De-

fendant has failed to articulate why the particular facts that are alleged in the instant action might warrant extraordinary punitive damages.

*Id.* at 1248. Here, Defendant not only failed to compare the facts of Plaintiff's case with the facts of other cases where punitive damages have been awarded in excess of the jurisdictional amount, it failed even to cite any such cases. In summary, Defendant has established only that Plaintiffs seek punitive damages and that such damages are available as a matter of law. This is insufficient to establish that it is more likely than not that a potential punitive damage award will increase the amount in controversy above $75,000. *See McCaa,* 330 F.Supp.2d at 1148–49; *Wilson,* 250 F.Supp.2d at 1264–65; *Surber,* 110 F.Supp.2d at 1232.

The evidence submitted by Defendant provides no basis for the Court to conclude that the amount in controversy exceeds $75,000. In light of the "strong presumption against removal jurisdiction," *Gaus,* 980 F.2d at 566, the Court concludes that it lacks subject matter jurisdiction over this action.

### C. Request for Stipulation

Defendant's request that the Court order Plaintiffs to stipulate that their damages are less than $75,000 is denied. The burden is on Defendant to prove the amount in controversy. Accordingly, Plaintiffs need not stipulate to limit their future remedies to prevent Defendant's removal to federal court. *See Dobson v. United Airlines, Inc.,* 2002 WL 31689365 (N.D.Cal. Nov.25, 2002).

### D. Later Removal

If at a later time it becomes apparent through "an amended pleading, motion, order or other paper" that the amount in controversy exceeds $75,000, MSIC may then remove the case within 30 days of receiving such notice. 28 U.S.C. § 1446(b); *Birkenbuel v. M.C.C. Constr. Corp.,* 962 F.Supp. 1305, 1307 (D.Mont. 1997). Defendant's right to remove the case at a later time is, of course, subject to the one-year limit on removal. 28 U.S.C. § 1446(b) ("[A] case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.").

IT IS THEREFORE ORDERED that this case shall be remanded to the Maricopa County Superior Court.